Andrew D. Skale (SBN 211096)
askale@mintz.com
Ben L. Wagner (SBN 243594)
bwagner@mintz.com
MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO P.C.
3580 Carmel Mountain Road, Suite 300
San Diego, CA 92130
Telephone: (858) 314-1500
Facsimile: (858) 314-1501

Attorneys for Plaintiffs
LASSWELL FOUNDATION FOR LEARNING
AND LAUGHTER, INC. and
FRED LASSWELL, INC.

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LASSWELL FOUNDATION FOR LEARNING AND LAUGHTER, INC. and FRED LASSWELL, INC.,<br><br>        Plaintiffs,<br><br>   vs.<br><br>TIMOTHY SCHWARTZ; DESIGN TANK, INC.; and DOES 1-10, inclusive,<br><br>        Defendants. | Case No. **'16CV0497 BEN WVG**<br><br>**COMPLAINT FOR:**<br><br>1. **CYBERSQUATTING (CARTOONYS.COM);**<br>2. **CYBERSQUATTING (DAY TO LAUGH AND PLAY.ORG)**<br>3. **TRADEMARK INFRINGEMENT (CARTOONYS MARK);**<br>4. **TRADEMARK INFRINGEMENT (A DAY TO LAUGH AND PLAY MARK);**<br>5. **COPYRIGHT INFRINGEMENT**<br>6. **COMMON LAW UNFAIR COMPETITION;**<br>7. **UNFAIR COMPETITION-- CALIFORNIA BUSINESS & PROFESSIONS CODE §17200;**<br>8. **CONVERSION**<br>9. **BREACH OF CONTRACT**<br>10. **FRAUD**<br><br>**JURY DEMANDED** |

Plaintiffs Fred Lasswell, Inc. and Lasswell Foundation for Learning and Laughter, Inc. (collectively, "Plaintiffs") bring suit for cybersquatting, trademark infringement, copyright infringement, common law unfair competition, unfair competition under California Business and Professions Code section 17200 et seq., conversion, breach of contract, and fraud against Defendants Timothy Schwartz and Timothy Schwartz d/b/a Design Tank (collectively "Defendants") and allege as follows:

## THE PARTIES

1.      Plaintiff Fred Lasswell, Inc. is a Florida corporation with its principal place of business at 1111 Northwestshore Boulevard, Tampa, Florida 33607.

2.      Plaintiff Lasswell Foundation for Learning and Laughter, Inc. (the "Lasswell Foundation") is a New York corporation with its principal place of business at 1111 Northwestshore Boulevard, Tampa, Florida 33607.

3.      Defendant Timothy Schwartz ("Schwartz") resides in or near Tampa, Florida.  Schwartz registered and operates the websites www.cartoonys.com and www.daytolaughandplay.org.

4.      Defendant Design Tank, Inc. ("Design Tank") is an Illinois corporation owned and operated by Timothy Schwartz, with a business address of 503 N. Fair Street, Olney, Illinois.  Although Schwartz owns the company, the corporation was involuntarily dissolved.  Schwartz continues to operate it as a business and as such is personally liable for all debts of Design Tank.

5.      Defendants' actions alleged herein were those of themselves, their agents and/or licensees, and they are jointly and severally liable for the conduct of one another as though taken themselves.

6.      Plaintiffs are in the process of confirming the true names and capacities of the defendants designated in this Complaint as DOES 1 through 10, inclusive, and therefore sues these defendants by fictitious names at this time.  DOES are affiliates or related entities to the named defendants and, on information and belief, are

residing in, or will be present in, the State of California and this judicial district or have transacted business in the State of California during the time period covered by this Complaint, and are subject to the jurisdiction of this Court. Plaintiffs will amend their Complaint to include the name or names of said persons or entities when that information is confirmed. Plaintiffs are informed and believe, and on that basis allege, that each of the DOE defendants is in some manner or degree responsible and liable for the acts and omissions alleged herein.

## JURISDICTION AND VENUE

7.     This Court's jurisdiction rests upon 15 U.S.C. § 1121(a), 28 U.S.C. §§ 1338(a) & (b), and 28 U.S.C. § 1367(a).

8.     This Court has jurisdiction over the federal trademark infringement and dilution claims pursuant to 15 U.S.C. § 1121(a) 28 U.S.C. § 1338(a).

9.     This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1338(b) and § 1367(a) as all claims herein form part of the same case or controversy.

10.     Personal jurisdiction exists over the Defendants because they purposefully directed their intentional and harmful conduct alleged below at this forum, and purposefully availed themselves of the benefits of California with respect to the claims alleged herein. For example, Defendants have held themselves out to be a California entity as of at least January 7, 2014:

11. Venue is proper under 28 U.S.C. § 1391 and 28 U.S.C. §1400 because a significant part of the events or omissions at issue took place in this district.

## GENERAL ALLEGATIONS

12. Several years ago, the Ohio State University Comic Art Museum and Library expressed an interest in acquiring the archive of Fred Lasswell ("Lasswell Archive") for its collection. Fred Lasswell was a famous artist and cartoonist, best known for his work producing the *Snuffy Smith* and *Barney Google* comic strips. The archive is comprised of thousands of physical books and drawings, including thousands of pieces of original artwork, as well as software and digitized artwork.

13. Goldbook Publishing, LLC ("Goldbook Publishing"), a company affiliated with Plaintiffs, agreed to prepare the Lasswell Archive for the university. The Lasswell Archive was located in Tampa, Florida, where Mr. Lasswell lived and worked, at two locations: 1111 Northwestshore Boulevard ("Lasswell Office") and 5108 Longfellow ("Lasswell Home").

14. Preparation of the Lasswell Archive for acquisition required the services of a methodical, organized individual with the technical skill to scan and organize the contents of the archive in electronic files. The work had to be performed in Florida.

15. Schwartz falsely represented to Goldbook Publishing that he and Design Tank had the experience, education, and technical and organizational skills necessary to prepare the archive for acquisition.

16. Based on Schwartz's representations, Goldbook Publishing and Schwartz agreed that Defendants would furnish the required services to prepare the Lasswell Archive for acquisition by the university.

17. As part of his relationship with Plaintiffs, Schwartz served as the "Web Master" for Plaintiffs' online presence and therefore had unfettered access to Plaintiffs' digital business archives and information. Schwartz severely abused that access as described in greater detail herein.

///

18.     Goldbook Publishing and Plaintiffs invested significant time, money, and energy to ensure the success of the consulting services.  Schwartz and Design Tank received substantial remuneration for their services.

19.     Defendants, however, utterly failed to scan and inventory the archives as they promised.  Instead, Defendants ransacked the Lasswell Office and the Lasswell Home, stealing an extensive collection of original artwork and documents in both physical and digital media.  Schwartz also began squatting in the Lasswell Home, going so far as to list the address on his driver's license and vehicle registration.

20.     Schwartz and Design Tank took possession of substantial personal property belonging to Plaintiffs.  They used the property for their own pecuniary interests, in ways never authorized by Plaintiffs, and Defendants refused to return the property.  The property improperly taken by Defendants includes priceless original cartoons and other original artwork belonging to Plaintiffs, personal effects, professional equipment, business records, computer equipment, and more.

21.     Through Schwartz's nefarious and unauthorized efforts, even Hoover's, Inc., a subsidiary of Dun & Bradstreet, listed Schwartz as the Creative Director and Executive for Red Ryder Enterprises, Inc., another company Plaintiffs worked with, as of at least January 7, 2014 (*images on next page*):

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /



22.    Defendants also created websites and online accounts with iTunes and YouTube designed to divert consumers from the legitimate website belonging to Plaintiffs.  Defendants even embezzled revenue generated by Plaintiffs' website.

/ / /

23.     Goldbook Publishing terminated the relationship with Schwartz and Design Tank in January 2014.  Goldbook Publishing also demanded that Schwartz and Design Tank vacate the Lasswell Home, return all of the missing property, and transfer or abandon operation of the online resources that Defendants were holding in violation of Plaintiffs' rights.  Schwartz and Design Tank refused to do so, instead attempting to further extort Plaintiffs by demanding additional compensation and by threatening to make false accusations to government authorities about Plaintiffs' tax obligations.

24.     In the end, Defendants' actions were nothing more than an attempt to take control of Plaintiffs' and their affiliates' brand image and goodwill, extort concessions from a failed business relationship, and exact misguided revenge.  Defendants' actions have crippled Plaintiffs' ability to run their business and indefinitely delayed the transfer of the Lasswell Archive to the university.

## FIRST CAUSE OF ACTION

## CYBERSQUATTING (CARTOONYS.COM)

## (15 U.S.C. § 1125(d))

25.     Plaintiffs incorporate by reference all other paragraphs contained in this Complaint as if stated herein.

26.     Fred Lasswell, Inc. owns the exclusive trademarks in the United States for CARTOONYS and DRAW AND COLOR YOUR VERY OWN CARTOONYS RIGHT ALONG WITH UNCLE FRED, as a result of its long and continuous use of the marks in connection with art education and other services throughout the United States.  The marks have become well-known nationwide, as a result of their popularized use by Fred Lasswell, Inc. for at least 30 years.

/ / /

/ / /

/ / /

/ / /

27.     Fred Lasswell, Inc. obtained a federal registration for one of its marks, which it has maintained on the primary trademark register since May 21, 1985, U.S. Reg. No. 1,336,417.  A true and correct copy of the registration is attached as **Exhibit A**, and the mark is depicted below:



28.     Each of these marks (collectively the "Cartoonys Marks") is inherently distinctive.

29.     Defendants purchased the domain name, cartoonys.com, and registered it in their own name(s).  Defendants were never authorized to register any domain names containing Plaintiffs' protected Cartoonys Marks in Defendants' own name(s), or to use the marks for their own purposes.

30.     Defendants hid the fact that they had purchased the cartoonys.com domain name from Plaintiffs, for a number of years.

31.     When the relationship between Plaintiffs and Defendants soured, Fred Lasswell, Inc. discovered the wrongful registration of the cartoonys.com domain name, and demanded that the registration be transferred to it immediately. Defendants refused.

32.     As of the date of this filing, there is no website posted on the domain. Until recently, the website posted on the domain contained a virtually identical version of the stylized Cartoonys mark prominently displayed on the homepage, identified "Fred Lasswell, Inc." in the browser tab, offered identical art education services, displays a picture of the iconic "Uncle Fred" and contained a copyright notice stating "© 2010 Fred Lasswell, Inc."  A reproduction of the Cartoonys homepage as it existed is shown below: [*Image on next page*]

///

///





33. Defendants' use of the cartoonys.com domain name containing the Cartoonys Marks or confusingly similar variations thereof was done with the bad faith intent to profit from the goodwill of the Cartoonys Marks:

    a. The Cartoonys Marks were well-established and highly distinctive at the time of Defendants' purchase of the domain names.

    b. Defendants registered the domain name in their own name to interfere with and divert consumers from Fred Lasswell, Inc.'s legitimate offering of services at its own website, unclefred.com, once the business relationship soured.

    c. The cartoonys.com domain name contains the inherently distinctive CARTOONYS mark, a word mark owned exclusively

8

by Fred Lasswell, Inc., as well as the strongest dominant portion of the word mark and stylized mark DRAW AND COLOR YOUR VERY OWN CARTOONYS RIGHT ALONG WITH UNCLE FRED.

d.  At no time have Defendants made any bona fide offering of any of their own goods or services under the CARTOONYS mark.

e.  The website content passes itself off as a website of "Fred Lasswell, Inc.," includes the representation that it is "by Uncle Fred" (another dominant portion of the registered stylized mark), contains the stylized figure associated with Uncle Fred (another dominant portion of the registered stylized mark), and even contains a picture of the actual "Uncle Fred," ensuring that no consumer can tell this counterfeit website located at the Cartoonys.com domain name is anything other than the homepage of Fred Lasswell's Inc.'s services offered under the Cartoonys Marks.

f.  Defendants have attempted to redirect traffic from a bona fide Fred Lasswell, Inc. website to cartoonys.com for purchasing unauthorized copies of Copyrighted Works:



g.  Defendants have attempted to demand compensation from the rightful trademark owner to return the domain name.

h.   The Cartoonys Marks are highly distinctive and famous.

34.   Accordingly, Fred Lasswell, Inc. is entitled to relief for cybersquatting under, *inter alia*, subsections (i), (ii)(I) and (ii)(II) of the cybersquatting provisions of 15 U.S.C. § 1125(d)(1)(A).

35.   The Defendants first used the Cartoonys Marks decades after the 1980s adoption of the marks by Fred Lasswell, Inc.  Defendants willfully intended to trade on the recognition of the famous Cartoonys Marks or harm the reputation of Fred Lasswell, Inc.

36.   Such cybersquatting was done willfully and in bad faith, knowing it would result in the likely confusion and deception of others, in order to profit off the Cartoonys Mark.

37.   Fred Lasswell, Inc. has suffered damages in an amount to be established after proof at trial or in the statutory amount of $100,000 per domain name.

38.   Fred Lasswell, Inc. is further entitled to the disgorgement of Defendants' profits for their unjust enrichment from the wrongful conduct.

39.   Fred Lasswell, Inc. is entitled to enhanced damages up to treble, punitive damages, and attorney fees as a result of Defendants' bad-faith conduct, done with malice, oppression, and/or fraud.

40.   Fred Lasswell, Inc.'s remedies at law are inadequate, entitling it to an injunction enjoining Defendants' cybersquatting and directing the Defendants and the registrar of the domain names to transfer the registration in the Cartoonys.com domain to Fred Lasswell, Inc., under 15 U.S.C. § 1125(d)(1)(C).

## SECOND CAUSE OF ACTION
## CYBERSQUATTING (DAYTOLAUGHANDPLAY.ORG)
## (15 U.S.C. § 1125(d))

41.   Plaintiffs incorporate by reference all other paragraphs contained in this Complaint as if stated herein.

/ / /

42. The Lasswell Foundation owns the exclusive trademarks in the United States for A DAY TO LAUGH AND PLAY, and has maintained a federal registration on the principle trademark register since August 18, 2009, for the mark in connection with "charitable services; namely, conducting and organizing cultural, educational and recreational events and activities for children and families, in Class 41."

43. A true and correct copy of the U.S. Reg. No. 3,668,367 is attached as **Exhibit B**. In addition to its federal registration, the Lasswell Foundation owns nationwide rights to the A DAY TO LAUGH AND PLAY mark by virtue of its long and continuous nationwide use of the mark in connection with these services since at least 2007. The mark has become well-known nationwide by the relevant consumers.

44. The mark is inherently distinctive.

45. Defendants purchased the domain name, daytolaughandplay.org, and registered it in their own names. Defendants were never authorized to register any domain names of Plaintiffs in their own names, or to use them for Defendants' own purposes. For example, as seen below, the domain "daytolaughandplay.org" was created on "12-Jan-2012" by Design Tank:



46.     As of the date of this filing, there is no website posted on the domain. The page previously was used as an ad-revenue-generating site.  It displayed click-through ads targeted at those seeking out a domain related to A DAY TO LAUGH AND PLAY, in an attempt to redirect traffic to these click-through sites.

47.     The Lasswell Foundation demanded the daytolaughandplay.org registration be transferred to it immediately, but Defendants failed to do so.

48.     The website posted on the domain consists entirely of the A DAY TO LAUGH AND PLAY trademark (minus the prefatory "A"), and was registered with the bad faith intent to profit from the goodwill of the A DAY TO LAUGH AND PLAY mark:

a.      The A DAY TO LAUGH AND PLAY mark was well-established, federally registered, and highly distinctive at the time of Defendants' purchase of the domain names.

b.      Defendants only registered the domain name daytolaughandplay.org in their own name to interfere with the Lasswell Foundation's offering of services under the mark once the business relationship soured.

c.      The domain name daytolaughandplay.org contains the inherently distinctive A DAY TO LAUGH AND PLAY mark, a mark owned exclusively by the Lasswell Foundation.

d.      At no time have Defendants made any bona fide offering of any legitimate goods or services of its own under the A DAY TO LAUGH AND PLAY mark (or any other similar mark).

e.      The website seeks to generate click-through ad revenues from those seeking out the Lasswell Foundation's A DAY TO LAUGH AND PLAY charitable services.  On information and belief, the ads are targeted by an ad generating program that customizes the ads in an attempt to make them most relevant to those consumers

who would be seeking out goods or services connected to DAY TO LAUGH AND PLAY.

    f.    Defendants have attempted to demand compensation from the rightful trademark owner to return the domain name.

    g.    The A DAY TO LAUGH AND PLAY mark is highly distinctive and famous.

49. Accordingly, the Lasswell Foundation is entitled to relief for cybersquatting under, *inter alia*, both subsections (i), (ii)(I) and (ii)(II) of the cybersquatting provisions of 15 U.S.C. § 1125(d)(1)(A).

50. The Defendants first used the A DAY TO LAUGH AND PLAY mark after the 2007 adoption of the mark by the Lasswell Foundation. Defendants willfully intended to trade on the recognition of the Lasswell Foundation's mark or harm the reputation of the Lasswell Foundation.

51. Such cybersquatting was done willfully and in bad faith, knowing it would result in likely confusion and deception of others, and to profit off the use of the A DAY TO LAUGH AND PLAY mark in a domain name.

52. The Lasswell Foundation has suffered damages in an amount to be established after proof at trial or in the statutory amount of $100,000 per domain name.

53. The Lasswell Foundation is further entitled to the disgorgement of Defendants' profits for their unjust enrichment from the wrongful conduct.

54. The Lasswell Foundation is entitled to enhanced damages up to treble, punitive damages, and attorney fees as a result of Defendants' bad-faith conduct, done with malice, oppression, and/or fraud.

55. The Lasswell Foundation's remedies at law are inadequate, entitling it to an injunction enjoining Defendants' cybersquatting, and directing the Defendants and the registrar of the domain names to transfer the registration in the daytolaughandplay.org domain to the Lasswell Foundation.

## THIRD CAUSE OF ACTION

## TRADEMARK INFRINGEMENT (CARTOONYS MARK)

### (15 U.S.C. §§ 1114, 1125 *et seq.*)

56.　Plaintiffs incorporate by reference all other paragraphs contained in this Complaint as if stated herein.

57.　DRAW AND COLOR YOUR VERY OWN CARTOONYS RIGHT ALONG WITH UNCLE FRED, U.S. Reg. No. 1,336,417, is a valid, protectable trademark.

58.　Fred Lasswell, Inc. owns the exclusive trademarks in the United States to the Cartoonys Marks, including U.S. Reg. No. 1,336,417, DRAW AND COLOR YOUR VERY OWN CARTOONYS RIGHT ALONG WITH UNCLE FRED.

59.　Defendants' conduct as to each of the Cartoonys Marks, as alleged above, is without the consent of Plaintiffs and is used in a manner that is likely to cause confusion among ordinary consumers as to the source, sponsorship, affiliation, or approval of the goods, in violation of 15 U.S.C. § 1114.

60.　Fred Lasswell, Inc. also obtained a federal registration for its iconic face logo shown below on November 19, 1985, U.S. Reg. No. 1,371,103 (the "Face Logo"), a true and correct copy of the registration is attached as **Exhibit C.**



61.　Defendants started selling merchandise on Cafepress.com, using the below logo:

1    62.    The above logo is confusingly similar to the Face Logo.  Defendants'

2  conduct as to the Face Logo, is without the consent of Plaintiffs and is used in a

3  manner that is likely to cause confusion among ordinary consumers as to the source,

4  sponsorship, affiliation, or approval of the goods in violation of 15 U.S.C. § 1114.

5    63.    Defendants have also used marks confusingly similar to the Cartoonys

6  and Face Logo Marks on popular social media websites, including YouTube and

7  Facebook.  Indeed, Defendants have passed themselves off as Fred Lasswell on these

8  social media sites, whose iconic image is a dominant portion of the registered

9  Cartoonys Mark.

10    64.    As detailed above, Defendants further used the Cartoonys Marks on their

11  unauthorized website, cartoonys.com, through which Defendants sold unauthorized

12  copies of Fred Lasswell, Inc. products bearing the Cartoonys Marks. For example, as

13  seen below, cartoonys.com included products bearing the Cartoonys Marks, as of

14  January 12, 2014:



65.     Defendants also used the Cartoonys Marks in conjunction with an Apple iTunes account and electronic storefront.  Defendants sold digital reproductions of Fred Lasswell, Inc., artwork and videos bearing the Cartoonys Marks through the iTunes account.  Plaintiffs never authorized the creation of this account or the sale of any digital reproductions of Fred Lasswell artwork and videos bearing the Cartoonys marks.  For example, as seen below, products bearing the Cartoonys Marks were sold by Schwartz, without authorization, on the iTunes storefront as of at least January 12, 2014:



66.     Plaintiffs have yet to determine the full extent of Defendants' infringement of the Cartoonys and Face Logo Marks.

67.     As a result, Fred Lasswell, Inc. has been damaged in an amount to be established at trial, including Defendants' profits for the infringement, trebled based on exceptional circumstances.

68.     The use of identical services constitutes counterfeiting of the registered mark under U.S. Reg. Nos. 1,336,417 and 1,371,103, entitling Fred Lasswell, Inc. to statutory damages in an amount up to $2 million dollars per type of goods or services sold, offered for sale, or distributed.

69.     Defendants' actions constitute knowing, deliberate, and willful infringement of Plaintiffs' federally registered marks.  The knowing and intentional nature of the acts set forth herein renders this an exceptional case under 15 U.S.C. § 1117(a) and entitles Fred Lasswell, Inc. to attorneys' fees and costs.

70.     Fred Lasswell, Inc. is entitled to enhanced damages up to treble, punitive damages, and attorney fees as a result of Defendants' bad-faith conduct, done with malice, oppression and/or fraud.

71.     Fred Lasswell, Inc.'s remedies at law are inadequate, entitling it to an injunction enjoining Defendants' infringement of the Cartoonys and Face Logo Marks.

## FOURTH CAUSE OF ACTION

### TRADEMARK INFRINGEMENT (A DAY TO LAUGH AND PLAY)
### (15 U.S.C. §§ 1114, 1125 *et seq.*)

72.     Plaintiffs incorporate by reference all other paragraphs contained in this Complaint as if stated herein.

73.     A DAY TO LAUGH AND PLAY is a valid, protectable trademark.

74.     The Lasswell Foundation owns the exclusive trademarks in the United States to the A DAY TO LAUGH AND PLAY, including U.S. Reg. No. 3,668,367.

75.     Defendants' conduct as to A DAY TO LAUGH AND PLAY, is without the consent of The Lasswell Foundation and is used in a manner that is likely to cause confusion among ordinary consumers as to the source, sponsorship, affiliation, or approval of the goods in violation of 15 U.S.C. § 1114.

76.     Defendants have also used marks confusingly similar to the A DAY TO LAUGH AND PLAY mark on popular social media websites, including YouTube and Facebook.

77.     As a result, the Lasswell Foundation has been damaged in an amount to be established at trial, as well as Defendants' profits for the infringement, trebled based on exceptional circumstances.

78. The use of identical services constitutes counterfeiting of the registered mark under U.S. Reg. No. 3,668,367, entitling the Lasswell Foundation to statutory damages in an amount up to $2 million dollars per type of goods or services sold, offered for sale, or distributed.

79. Defendants' actions constitute knowing, deliberate, and willful infringement of Plaintiffs' federally registered marks. The knowing and intentional nature of the acts set forth herein renders this an exceptional case under 15 U.S.C. § 1117(a) and entitles The Lasswell Foundation to attorneys' fees and costs.

80. The Lasswell Foundation is entitled to enhanced damages up to treble, punitive damages, and attorney fees as a result of Defendants' bad-faith conduct, done with malice, oppression, and/or fraud.

81. The Lasswell Foundation's remedies at law are inadequate, entitling it to an injunction enjoining Defendants' infringement of the A DAY TO LAUGH AND PLAY Mark.

**FIFTH CAUSE OF ACTION**

**COPYRIGHT INFRINGEMENT**

**(17 U.S.C. §§ 106, 501 *et seq.*)**

82. Plaintiffs incorporate by reference all other paragraphs contained in this Complaint as if stated herein.

83. Fred Lasswell, Inc. owns the copyright in many original works of art and audiovisual works (the "Copyrighted Works"). These include:

- The "Draw and color a cartoony party with Uncle Fred" video, Registration Number PA0000297940.
- The "Draw and color far-out pets" video, Registration Number PA0000518756.
- The "Draw and color funny doodles with Uncle Fred" video, Registration Number PA0000519569, and kids' workbook, Registration Number PA0000576308.

- The "Draw and color with Uncle Fred" video, Registration Number PA0000214257.
- "Uncle Fred" visual material, Registration Number VA 0000224105.

84.    Defendants produced, sold, and/or distributed unauthorized reproductions of these Copyrighted Works in several forms.

85.    Defendants created a YouTube account under the alias "Cartoonys," and posted video clips from the Copyrighted Works.  Defendants were never authorized to create such an account or post the video clips from the Copyrighted Works to the YouTube website. For example, as seen below, Schwartz was posting videos by "Cartoonys" on YouTube without authorization as of at least January 12, 2014:



86.    As of January 2, 2014, as depicted above, additional Copyrighted Works Schwartz was posting online without permission include, but are not limited to,

"Draw and Color Funny Doodles with Uncle Fred Theme Song" and "Draw and Color a Dolphin with Uncle Fred."

87.    Defendants created an Apple iTunes account for the purpose of selling Uncle Fred "apps" for the Apple iPad through the iTunes Store.  The "Seller" for this account was listed as "Timothy Schwartz."  The iTunes storefront for each app contained a copyright notice stating "© 2013 Fred Lasswell, Inc."  For example, as of at least January 12, 2014,  "Timothy Schwartz" is listed as the developer, author, and seller on iTunes for the "Draw and Color Far-Out Pets with Uncle Fred":



88.    Defendant Timothy Schwartz listed himself as the "artist" in the iTunes storefront.  For example, as seen below, the iTunes storefront URL including /artist/timothy-schwartz/id605380607 listed as the "artist" as of January 12, 2014:



89.    Defendants began selling Uncle Fred "apps," containing Copyrighted Works, in early 2013.  For example, as of at least January 12, 2014, Timothy

Schwartz was listed as the "Seller" while representing he possessed certain ownership rights ("© 2013 Fred Lasswell, Inc.") on the iTunes storefront as of January 12, 2014:



90.     As of January 12, 2014, the five apps Schwartz listed for sale, without authorization, on the iTunes storefront included: (1) "Draw and Color"; (2) "Draw and Color A Cartoony Party"; (3) "Draw and Color Funny Doodles"; (4) "Draw and Color Far-Out Pets"; and (5) "Draw and Color Your Very Own Cartoonys." Schwartz sold each of these apps, except "Draw and Color," for $1.99 per download:



1    91.    Screenshots of the apps advertised that "nearly an hour of Uncle Fred's
2    video lessons" was included as part of at least four of the apps.

3    92.    These "video lessons" included all or part of the Copyrighted Works, in
4    addition to other copyrighted works owned by Fred Lasswell, Inc.  Indeed, on the
5    cartoonys.com website, Defendants stated that "[e]ach application has all the same
6    lessons from each of the videos of the same name."

7    93.    For example, Defendants launched the app "Draw and Color Far-Out
8    Pets", a conversion of one of the original videos by at least January 12, 2014:



17    94.    Fred Lasswell, Inc. never authorized the creation of the iTunes account
18    or the creation of any apps using the Copyrighted Works.  As of this filing, the iTunes
19    account appears to have been inactivated.

20    95.    Defendants also sold reproductions of the Copyrighted Works through
21    their website, cartoonys.com, including four of the "Draw and Color" videos in both
22    VHS and DVD formats.  Neither Fred Lasswell, Inc. nor its agents authorized the
23    creation of the cartoonys.com website or the sale of any reproductions of the
24    Copyrighted Works on the cartoonys.com website. For example, as seen below,
25    Defendants were selling reproductions of the Copyrighted Works on cartoonys.com
26    with four "Draw and Color" videos in both VHS and DVD formats as of January 12,
27    2014:

28    / / /



96. Defendants have infringed Fred Lasswell, Inc.'s copyright in the Copyrighted Works in violation of Sections 106 and 501 of the Copyright Act, 17 U.S.C. §§ 106 and 501.

97. As a result, Fred Lasswell, Inc. has been damaged in an amount to be established at trial, and it is also entitled to Defendants' profits from the infringement, or alternatively, to statutory damages in the amount of $150,000 per work. Fred Lasswell, Inc. is further entitled to its attorney's fees and full costs of this action.

## SIXTH CAUSE OF ACTION

## COMMON LAW UNFAIR COMPETITION

98. Plaintiffs incorporate by reference all other paragraphs contained in this Complaint as if stated herein.

/ / /

99.     The claims alleged above also establish unfair competition compensable under the common law.

100.    As a direct and proximate result of Defendants' wrongful acts, Plaintiffs have suffered and continue to suffer substantial pecuniary losses and irreparable injury to its business reputation and goodwill.

101.    Such acts have caused damages in an amount to be established at trial.

102.    Such acts constitute passing off of the Plaintiffs' marks.

103.    Such acts, as alleged above, were done with malice, oppression, and/or fraud, thus entitling Plaintiffs to exemplary and punitive damages.

104.    Plaintiffs' remedies at law are inadequate, entitling Plaintiffs to an injunction enjoining Defendants' further unfair competition.

## SEVENTH CAUSE OF ACTION

### UNFAIR COMPETITION

### (CAL. B&P § 17200 *et seq.*)

105.    Plaintiffs incorporate by reference all other paragraphs contained in this Complaint as if stated herein.

106.    Defendants, by engaging in the wrongful conduct alleged in the Complaint have engaged in unlawful, unfair or fraudulent business act(s) or practice(s) within the meaning of Business and Professions Code §§ 17200 et seq.

107.    Defendants' unlawful, unfair or fraudulent business act(s) or practice(s) have resulted in an unfair competitive advantage to Defendants and have damaged Plaintiffs' business, by virtue of the acts alleged herein.

108.    Because of Defendants' unlawful, unfair or fraudulent business act(s) or practice(s), Plaintiffs are entitled to full restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits that may have been obtained by Defendants as a result of such unfair business acts or practices.

109.    Plaintiffs are entitled to their attorneys' fees and costs in pursuing this action.

110.    Plaintiffs' remedies at law are inadequate, entitling Plaintiffs to an injunction enjoining Defendants' further unfair competition.

## EIGHTH CAUSE OF ACTION

## CONVERSION

111.    Plaintiffs incorporate by reference all other paragraphs contained in this Complaint as if stated herein.

112.    The Schwartz Defendants were engaged by Plaintiff, in part, to digitize certain valuable archives in Goldbook Publishing's offices.

113.    Plaintiffs own property for which Defendants have taken possession including, but not limited to:

a. The proprietary tangible, digital business, and other property belonging to the Fred Lasswell Archive including, but not limited to, original artwork, sketches, drawings, writings, photographs, music, songs, films, videos, and books that were taken by Defendants;

b. The proprietary tangible, digital business, and other property belonging to The Lasswell Foundation for Learning and Laughter that were taken by Defendants;

c. The proprietary tangible, digital business, and other property belonging to Fred Lasswell, Inc. that were taken by Defendants;

d. Goldbook Publishing-related business records, account information, and proprietary material including ,but not limited to, access codes to digital programming and websites, bank records, account numbers, PayPal account information, customer lists, and Uncle Fred's "Draw & Color with Uncle Fred" Children's educational programs;

e. Goldbook Publishing's computers and their content including internal and external media devices that were taken by Defendants;

f. Fred Lasswell's historical documents that were taken by Defendants including, but not limited to, books, first editions, paintings, engravings,

drawings and photographs of American Colonial History, the American West, American Theatre, the early days of American media and merchandising, Florida (Tampa), New York, World War II, The Great Depression, and rural America;

g. All paintings, pen and ink drawings, sketches, comic panels, illustrations, uncirculated file copies of published children's books, Golden age comic books, trading cards, autographed works and nostalgic merchandise of popular fictional characters including Winnie the Pooh, Tarzan, Red Ryder, and Blondie that were taken by Defendants;

h. All work taken by Defendants that were created by Fred Lasswell (Snuffy Smith), Stephen Slesinger (Tarzan), A.A. Milne (Winnie the Pooh) E. H. Shepard (Winnie the Pooh), Fred Harman (Red Ryder), Charles Schultz (Peanuts), and Dik Browne (Hagar the Horrible); and

i. All material possessions taken by Defendants from the home located at 5108 Longfellow Ave. in Tampa, Florida;

j. The embezzled revenue, in a sum capable of identification, from the sale of Uncle Fred videos by Fred Lasswell, Inc.;

k. All items and materials taken by Defendants from Fred Lasswell's office, including but not limited to:

    a. All items from the video production room;

    b. All items from the art studio;

    c. All items from the archival storage;

    d. All items from the general storage room;

    e. All items from the file out coves;

    f. All artbooks;

    g. All framed art work;

    h. All unframed original artwork;

/ / /

i. All archival boxes of Fred Lasswell fan mail labeled "Uncle Fred's fans and friends;"

j. The Whiteboard;

k. Fred Lasswell's chair;

l. All items from Fred Lasswell's desk;

m. All mini-cassettes; and

n. All contents from the photograph boxes stacked on the shelves.

114. Defendants converted the aforementioned tangible property by wrongfully maintaining possession after return was demanded and the reason (if any) for initial possession was terminated.

115. Defendants also converted a portion of tangible property Plaintiffs own by taking physical pictures of original and highly proprietary files, artwork, and cartoon renderings and wrongfully maintaining possession after return was demanded and the reason for initial possession was terminated.

116. As a direct result of Defendants conversion, Plaintiffs have suffered damages in an amount to be established at trial.

## NINTH CAUSE OF ACTION

### BREACH OF CONTRACT

117. Plaintiffs incorporate by reference all other paragraphs contained in this Complaint as if stated herein.

118. The agreement is valid and enforceable, and supported by adequate, mutual consideration.

119. Plaintiffs have performed all of their obligations under the agreement, and any further unperformed obligations (if any) are excused.

120. Goldbook Publishing and Schwartz agreed that Defendants would furnish the required services to prepare the Lasswell Archive for acquisition by the university.

/ / /

121. Defendants agreed that they would:

    a. Carefully prepare an inventory of the Lasswell Archive in accordance with the requirements of the university, and to make digital scans of physical artwork;

    b. replace all archival materials in the locations in which they were found following their being inventoried and scanned;

    c. not disturb the furniture or furnishings at the Lasswell Home or Office and to leave these premises in the same condition in which Schwartz would find them;

    d. not disturb any personal effects, materials unrelated to the process of creating the archive or any professional equipment; and

    e. not reside in either the Lasswell Office or Home.

122. Goldbook Publishing paid Defendants a substantial amount of money for their purported services. As described above, Defendants breached the agreement by, *inter alia*: (1) failing to carefully digitize and store the Lasswell Archive materials as promised, going to far as to steal the originals and the digitized archives that were created; (2) ransacking the Lasswell Office and displacing priceless works of art, furnishings, computer equipment, and professional equipment; and (3) residing at the Lasswell Home.

123. As a direct and proximate result of Defendants' wrongful acts, Plaintiffs have suffered and continue to suffer substantial pecuniary losses and irreparable injury to its business reputation and goodwill.

124. Such acts have caused damages in an amount to be established at trial.

## TENTH CAUSE OF ACTION

## FRAUD

125. Plaintiffs incorporate by reference all other paragraphs contained in this Complaint as if stated herein.

/ / /

126.   Schwartz represented to Goldbook Publishing that Schwartz and Design Tank had the experience, educational background, and technical and organizational skills necessary to prepare the Lasswell Archive for acquisition.

127.   On information and belief, Plaintiffs allege that Schwartz made these statements to Goldbook Publishing and its CEO, Pati Slesinger, with the intent to induce Goldbook Publishing to enter into an agreement with Defendants.  Through this agreement, Defendants sought to gain access to the entire Fred Lasswell, Inc., business and related entities, in order to steal Plaintiffs' original works of art, copyrighted and trademarked materials, trade secrets, business and computer equipment, and other tangible and intangible property.

128.   On information and belief, Plaintiffs allege that Schwartz's representations as to Defendants' experience, background, and skills were false, because Defendants knew they did not have the required skills or knowledge to complete the archival process for the Lasswell Archive.  Instead, Schwartz's representations were a ploy to gain access to Plaintiffs' business, from which Defendants brazenly stole original works of art, copyrighted and trademarked materials, trade secrets, business and computer equipment, and other tangible and intangible property belonging to Plaintiffs.

129.   Had Goldbook Publishing and Plaintiffs known the actual facts, they would not have contracted with Defendants for the preparation of the Lasswell Archive.

130.   As a direct and proximate result of Defendants' fraudulent conduct, Plaintiffs have been damaged in an amount subject to proof at the time of trial.

131.   Plaintiffs acts alleged above were willful, wanton, malicious, oppressive and undertaken with conscious disregard for the rights of Plaintiffs and with intent to defraud Plaintiffs, and justify the award of exemplary and punitive damages.

/ / /

/ / /

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs demand the following relief:

1. A judgment in favor of Plaintiffs, respectively, and against Defendants on all counts;

2. Preliminary and permanent injunctive relief as requested above, including for transfer of the registrations in the domain names by Defendants and/or the domain name registrar(s);

3. Damages in an amount to be determined at trial, including enhancement up to treble damages;

4. Defendants' unjust enrichment and/or disgorgement of Defendants' profits;

5. Return of all property Defendants converted;

6. Enhancement and trebling of damages due to willfulness and bad faith;

7. Exemplary and punitive damages;

8. Pre-judgment interest at the legally allowable rate on all amounts owed;

9. Statutory damages of up to $2 million per infringement per type of goods or services sold, offered for sale, or distributed, and $100,000 per domain name;

10. Costs, expenses and fees under, *inter alia*, 15 U.S.C. § 1117(a);

11. Restitution;

12. Attorney's fees under, among others, 15 U.S.C. §§ 1117(a) *et seq.* as an exceptional case and Cal. B&P §§ 17200 *et seq*.; and

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

1         13.    Such other and further relief as this Court may deem just and proper to

2    fully compensate Plaintiffs.

3

4    Dated:  February 25, 2016     MINTZ LEVIN COHN FERRIS GLOVSKY

5                         AND POPEO PC

6                   By  s/Andrew Skale

7                       Andrew Skale, Esq.
                        Ben L. Wagner, Esq.

8

9                   *Attorneys for Plaintiffs*
                    *LASSWELL FOUNDATION FOR LEARNING AND*
10                  *LAUGHTER, INC. and FRED LASSWELL, INC.*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial as to all issues that are so triable.

Dated: February 25, 2016
                    MINTZ LEVIN COHN FERRIS GLOVSKY
AND POPEO PC

By  s/Andrew Skale
        Andrew Skale, Esq.
        Ben L. Wagner, Esq.

*Attorneys for Plaintiffs*
*LASSWELL FOUNDATION FOR LEARNING AND*
*LAUGHTER, INC. and FRED LASSWELL, INC.*

46061560v.2