1  Andrew D. Skale (SBN 211096)
   askale@mintz.com
2  Ben L. Wagner (SBN 243594)
   bwagner@mintz.com
3  MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO P.C.
   3580 Carmel Mountain Road, Suite 300
4  San Diego, CA 92130
   Telephone:  (858) 314-1500
5  Facsimile:   (858) 314-1501

6  Attorneys for Plaintiffs

7

8                    UNITED STATES DISTRICT COURT

9                    SOUTHERN DISTRICT OF CALIFORNIA

10

11  LASSWELL FOUNDATION FOR              Case No. 3:16-cv-00497-BEN-WVG
    LEARNING AND LAUGHTER, INC.
12  and FRED LASSWELL, INC., RED         **AMENDED COMPLAINT FOR:**
    RYDER ENTERPRISES, INC., AND
13  GOLDBOOK LTD.,                       1.  **CYBERSQUATTING
                                             (CARTOONYS.COM);**
14                      Plaintiffs,      2.  **CYBERSQUATTING (DAY TO
              vs.                            LAUGH AND PLAY.ORG)**
15                                       3.  **TRADEMARK INFRINGEMENT
    TIMOTHY SCHWARTZ; DESIGN                 (CARTOONYS MARKS);**
16  TANK, INC.; and DOES 1-10,          4.  **TRADEMARK INFRINGEMENT
    inclusive,                               (A DAY TO LAUGH AND PLAY
17                                           MARK);**
                        Defendants.      5.  **COPYRIGHT INFRINGEMENT**
18                                       6.  **COMMON LAW UNFAIR
                                             COMPETITION;**
19                                       7.  **UNFAIR COMPETITION--
                                             CALIFORNIA BUSINESS &
20                                           PROFESSIONS CODE §17200;**
                                         8.  **CONVERSION;**
21                                       9.  **BREACH OF CONTRACT;**
                                         10. **FRAUD.**
22
23                                       **JURY DEMANDED**

24

25

26

27

28

1.    This case centers around the beloved late Uncle Fred:





2.    Plaintiffs bring suit for cybersquatting, trademark infringement, copyright infringement, common law unfair competition, unfair competition under California Business and Professions Code section 17200 et seq., conversion, breach of contract, and fraud against Defendants Timothy Schwartz and Design Tank, Inc. and DOES 1-10 (collectively "Defendants"), and allege as follows:

## THE PARTIES

3.    Plaintiff Fred Lasswell, Inc. is a Florida corporation with its principle place of business, at all times relevant herein, and for over 55 years, at 1111 North Westshore Boulevard, Tampa, Florida 33607, Suite 604, and since 2016, at 1211 North Westshore Blvd. Suite 700, Tampa, Florida 33607.

4.    Plaintiff Lasswell Foundation for Learning and Laughter, Inc. (the "Lasswell Foundation") is a Florida Not For Profit Corporation with its principle places of business at all relevant times at 1111 N. Westshore Blvd Tampa, Florida and (since 2016) 1211 North Westshore Boulevard, Tampa, Florida 33607.

5.    Plaintiff Red Ryder Enterprises, Inc. ("Red Ryder") is a New York corporation with its principle places of business at all relevant times at 1111 N.

Westshore Blvd Tampa, Florida and (since 2016) 1211 North Westshore Boulevard, Tampa, Florida 33607.

6.     Plaintiff Goldbook Ltd. ("Goldbook Publishing") is a California limited partnership with its principle place of business in Florida.  Goldbook provides, among other services, graphic design services for several entities, including Lasswell Foundation.  Goldbook had utilized Defendants' services from time to time, for example in connection with the 2000 and 2001 editions of the Goldbook (a publication printed annually for 17 years before Defendants' engagement).  (Little did Goldbook Publishing know that, as Schwartz later admitted, he had downloaded the contents of Goldbook Publishing's computers in California – which he later used to infringe on Red Ryder and the charity Day to Laugh and Play.

7.     Defendant Timothy Schwartz ("Schwartz") resides at 503 N. Fair Street, Olney, Indiana and 610 Bristle Lake Cir, Brownsburg, Indiana.  Schwartz registered and operates the websites www.cartoonys.com and www.daytolaughandplay.org, and (on information and belief) has previously operated and taken down other websites as well.

8.     Defendant Design Tank, Inc. ("Design Tank") is an Illinois corporation registered to do business in California (and with a registered California phone number), owned and operated by Timothy Schwartz, with a business address of 503 N. Fair Street, Olney, Illinois.  Although Schwartz owns the company, on information and belief the corporation was involuntarily dissolved by the Illinois Secretary of State on December 12, 2008, which he failed to disclose to Plaintiffs.  Schwartz continues to operate Design Tank as a business and as such is personally liable for all debts of Design Tank.  During the relevant time of work on the Goldbook project, it also claimed to be working and traveling to visit other Design Tank clients in Illinois, Indiana, Colorado, Utah and California.

9.     Defendants' actions alleged herein were those of themselves, their agents and/or licensees, and they are jointly and severally liable for the conduct of

one another as though taken themselves.

10.     Plaintiffs are in the process of confirming the true names and capacities of the defendants designated in this Complaint as DOES 1 through 10, inclusive, and therefore sue these defendants by fictitious names at this time.  DOES are affiliates or related entities to the named defendants and, on information and belief, are residing in, or will be present in, the State of California and this judicial district or have transacted business in the State of California during the time period covered by this Complaint, and are subject to the jurisdiction of this Court.  Plaintiffs will amend their Complaint to include the name or names of said persons or entities when that information is confirmed.  Plaintiffs are informed and believe, and on that basis allege, that each of the DOE defendants is in some manner or degree responsible and liable for the acts and omissions alleged herein.

## JURISDICTION AND VENUE

11.     This Court's jurisdiction rests upon 15 U.S.C. § 1121(a), 28 U.S.C. §§ 1338(a) & (b), and 28 U.S.C. § 1367(a).

12.     This Court has jurisdiction over the federal trademark infringement and dilution claims pursuant to 15 U.S.C. § 1121(a) and 28 U.S.C. § 1338(a).

13.     This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1338(b) and § 1367(a) as all claims herein form part of the same case or controversy.

14.     Personal jurisdiction exists over the Defendants because they purposefully directed their intentional and harmful conduct alleged below at this forum, and purposefully availed themselves of the benefits of California with respect to the claims alleged herein.

15.     Venue is proper under 28 U.S.C. § 1391 and 28 U.S.C. §1400 because a significant part of the events or omissions at issue took place in this district.  By way of example, (1) Defendants admitted that they downloaded the digital and other proprietary files of Plaintiff Goldbook in both California and Florida that contained,

*inter alia*, original now-infringed artwork for Plaintiff Red Ryder Enterprises, Lasswell Foundation and the Day to Laugh and Play project, and (2) conducted meetings in this forum related to Defendants' work for Plaintiffs.

## GENERAL ALLEGATIONS

16.     Many years ago, The Ohio State University Cartoon Research Library, the preeminent library of comics and cartoon art in the country first expressed an interest in acquiring the archive of Fred Lasswell ("Lasswell Archive") for its collection.  During what became the last two years of Fred Lasswell's life, he began preparing his archives (1)  for transfer to the library, where his own work, together with his vast collection of the arts and letters of Cartooning, representing the best loved artists and authors of popular 20th Century culture, would be safely preserved, while (2) arranging for his digital copies to be published on the internet and accessible to all people who, as the late Jay Kennedy aptly put it "could simply laugh at the jokes or look beyond them to see the artist's view of the world."

17.     Fred Lasswell was a very well loved and famous 20th Century humorist, humanitarian, prolific cartoonist and inventor. He is best known as the artist and writer of Barney Google and Snuffy Smith, for which he created more than 25,000. Daily and Sunday comic strips and over 152,000 drawings -- from 1933 to 2001. Barney Google and Snuffy Smith are recognized as the oldest continually syndicated Comic Strip in history. Barney Google was first created by Billie deBeck in 1919. In 1932 he met Fred Lasswell, a talented young artist that intrigued DeBeck. Fred Junior became DeBeck's assistant and a year later Barney Google met Snuffy Smith in the strip. Just as Barney was DeBeck's fictional voice, Snuffy was Lasswell's personality de plum. After DeBeck passed away, Fred Lasswell took over the strip, and in most ways it became Lasswell's fictional voice.  And the rest is history.  The below is a reminiscent example of these comic strips: [*Image on next page and remainder of page intentionally blank*]



18.     These original comic strips (owned by Plaintiff Red Ryder Enterprises) are incredibly valuable (over $600,000), as the collector's market places tremendous value on even scribblings by Fred Lasswell.  An example is the $1000 envelope scribbling on E-Bay shown below:



19.     In 2001 Fred Lasswell died, 10 weeks ahead of his deadline, with millions of fans for his comic strip across 21 Countries and 11 languages.  By then, he had won essentially every award  his industry could give him – some of them twice. His archives are comprised of hundreds of thousands of physical items that present a vivid compendium of American Life and 20th Century popular culture, through the creativity of artists and writers who helped us love it.  His Art Studio was a dream for every artist, full of every kind of artist supplies one could imagine.  His

Home Art Studio and garage (at the Lasswell Residence) were a laboratory of his creative ideas and inventions:

    a.    Comics for the Blind that "feel" funny, whimsical original songs, animal characters and teacher instruction manuals that teach kids to write and draw, including a new and easy way to learn the alphabet and numbers;

    b.    A collection spanning eighty years of original art, sketches, sketch books, storyboards, drawings, comic strip panels, letters, writings, jokes, humor skits, scripts, paintings, photographs, original films, published and unpublished books, golden age comic books, children's activity books, games, original children's media;

    c.    Proprietary software and digitized archives; and

    d.    Character and themed merchandise–together with art, writings, popular books, photographs and memorabilia, these materials represent  some of the most beloved fictional characters, artists and authors of popular 20th Century culture.

20.    At the time of his death, Mr. Lasswell had organized and digitized about 80% of his archives.  Goldbook Publishing was to complete the task.  In order to do so, Goldbook Publishing engaged with the Plaintiffs to arrange for completion of the digitizing of the Lasswell Archive prior to delivering it to the University.  The Lasswell Archive is located in Tampa, Florida, where Mr. Lasswell lived and worked, at two locations: 1111 North Westshore Boulevard ("The Lasswell Studio," relocated in early 2016) and the Lasswell Residence.

21.    Completion of the Lasswell Archive for acquisition required the services of methodical, organized individuals with the technical skill to scan and organize the remaining contents of the archive in electronic files.  The work had to be performed in Florida.

/ / /

22.     From time to time, Defendant Schwartz had worked as a digital project consultant to Goldbook Publishing.  This included the website for Draw and Color with Uncle Fred.  This was one of the first websites, intuitively designed and created by Fred Lasswell himself, which Schwartz technically maintained exactly as it had run prior to Mr. Lasswell's passing.  However, in order to get this additional digitizing work, Schwartz falsely represented to Goldbook Publishing that he and Design Tank also had the experience, education, and technical and organizational skills necessary to complete the Lasswell archive.

23.     Based on Schwartz's representations, Goldbook Publishing and Schwartz agreed that Schwartz and his company Design Tank would furnish the required services to prepare the Lasswell Archive.  Mr. Schwartz was to identify and index the files already digitized and stored on CDs in the digital library, and to identify, index and scan those not already digitized into the Lasswell Computers, at The Lasswell Studio.

24.      In this trusted capacity, Schwartz had access to plaintiff's and certain of Goldbook Publishing's computers and digital files. Schwartz severely abused that sensitive access as described in greater detail herein.

25.     Goldbook Publishing and Plaintiffs invested significant time, money, and energy to ensure the success of the consulting services.  Out-of-state staff took several trips to Tampa, staying (as did Schwartz) at a nearby hotel and nearby residence.  When the out-of-state staff left, Schwartz was to work with local Florida staff, including an artist who had served as one of Mr. Lasswell's artistic assistants and who had helped to prepare the archive with Mr. Lasswell prior to his death.

26.     Defendants, however, utterly failed to scan and inventory the archives as they promised.  Instead, they distanced themselves from local staff, gave false progress reports to California staff, seeking unsuccessfully to obtain permission for totally unrelated projects.  A project that was to take a couple months to complete dragged well beyond a year.

27.     Unbeknownst to Plaintiffs, Schwartz used this time to progressively cozy right into the Lasswell Residence.  Defendants had no permission to access the Lasswell Residence or do anything there *except* for limited access with a Lasswell family member present.  The Lasswell Residence was sacrosanct, and contained the personal belongings, and household items, important momentos and memorabilia of the Lasswell family.  But under the guise of an offer to pick up mail, Schwartz (without permission or Plaintiffs' knowledge) then obtained access to the Lasswell Residence mail and registered Schwartz' driver's license to the Lasswell Residence. Next, under the guise of "tidying" the home for Lasswell family members coming to town, Defendants obtained access to the home without the presence of local staff or family members.  And as the project wore on, under the guise of needing late-night access to the office at the Lasswell Residence, Schwartz began squatting at the residence without any knowledge or approval of Plaintiffs.  Defendants' squatting was only discovered in 2013 when out-of-state staff unexpectedly came to the Lasswell Residence on another project.

28.     Instead of completing the project, Defendants systematically ransacked the Lasswell Office and the Lasswell Residence.  Defendants searched the Lasswell Residence for keys to every locked closet, file and safe, broke into these areas, and was later (as reported by neighbors and security feeds) seen to be taking dumpster loads of items out of the house under cover of night only to unload items from them. He even later admitted having two trailer loads filled when he returned to both Illinois and Indiana (on information and belief, these trailer loads were filled with Plaintiffs' property).  Schwartz went so far as to find money hidden in the roof. Defendants stole an extensive collection of materials, ephemera, storage disks and CDs, original artwork and documents in both physical and digital media.

29.     Schwartz and Design Tank took possession of substantial personal property belonging to Plaintiffs.  They used the property for their own pecuniary interests, in ways never authorized by Plaintiffs, and Defendants refused to return the

property.  The property improperly taken by Defendants includes priceless original cartoons and other original artwork belonging to Plaintiffs, personal effects, professional equipment, business records, computer equipment, and more.  This included the over $600,000 in original artwork belonging to Red Ryder Enterprises.

30.     Schwartz has admitted he moved everything from Plaintiffs' offices and residence, but has repeatedly refused to say where the items were moved, to put them back, or return the items.

31.     In addition, Schwartz acted to the outside world as if he was an owner or key executive, rather than a consultant digitizing limited files.  He made sure public databases such as Hoovers listed Schwartz as the "Creative Director and Executive" for Red Ryder Enterprises, Inc. (he held no such position).  Schwartz redirected the UncleFred.com  online store to a separate website that he created and controlled, and set up a PayPal account linked to the UncleFred.com  website to embezzle revenues earned off of Uncle Fred properties.  He held himself out to the public as the contact for these websites, using an Indiana phone number (where his brother lives).

32.     Ultimately, Goldbook Publishing terminated the relationship with Schwartz and Design Tank.  Goldbook Publishing also demanded that Schwartz and Design Tank vacate the Lasswell Residence, return all of the missing property, and transfer or abandon operation of the online resources that Defendants were holding in violation of Plaintiffs' rights.  Schwartz and Design Tank refused to do so, instead attempting to further extort Plaintiffs by demanding additional compensation and by threatening to make false accusations to government authorities about Plaintiffs' tax obligations.

33.     In the end, Defendants' actions were nothing more than an attempt to take control of Plaintiffs' and their affiliates' brand image, intangible goodwill and tangible property, to extort concessions from a failed business relationship, and to exact misguided revenge.  Defendants' actions have crippled Plaintiffs' ability to run their businesses, and indefinitely delayed the transfer of the Lasswell Archive.  To

make matters worse, Schwartz has behaved erratically in light of the revelations, (1) first claiming he was entitled to $70,000 or something less, apologizing for his delays (see true and correct copy of letter, attached as **EXHIBIT D**), (2) then later moving out of the Lasswell Residence voluntarily, (3) then later promising in early 2016 (as Plaintiffs moved office locations) to identify where the "missing" property was, but (4) only to then change his tune, stealthily move back in to squat in the Lasswell Residence, and demand $300,000 ransom before the hostaged property would be revealed.

34.    Accordingly, Plaintiffs have filed suit to protect their interest and pursue this wrongdoing.

## FIRST CAUSE OF ACTION
## CYBERSQUATTING (CARTOONYS.COM)
## (15 U.S.C. § 1125(d))

35.    Plaintiffs incorporate by reference all other paragraphs contained in this Complaint as if stated herein.

36.    Fred Lasswell, Inc. owns the exclusive trademarks in the United States for CARTOONYS and DRAW AND COLOR YOUR VERY OWN CARTOONYS RIGHT ALONG WITH UNCLE FRED, as a result of its long and continuous use of the marks in connection with art education and other services throughout the United States.  The marks have become well-known nationwide, as a result of their popularized use by Fred Lasswell, Inc. for at least 30 years.

37.    Fred Lasswell, Inc. obtained a federal registration for one of its marks, which it has maintained on the primary trademark register since May 21, 1985, U.S. Reg. No. 1,336,417.  A true and correct copy of the registration is attached as **EXHIBIT A**, and the mark is depicted below:



1    38.    Each of these marks (collectively the "Cartoonys Marks") is inherently
2 distinctive.

3    39.    Defendants purchased the domain name, cartoonys.com, and registered it
4 in their own name(s).  Defendants were never authorized to register any domain
5 names containing Plaintiffs' protected Cartoonys Marks in Defendants' own name(s),
6 or to use the marks for their own purposes.

7    40.    Defendants hid the fact that they had purchased the cartoonys.com
8 domain name from Plaintiffs, for a number of years.

9    41.    When the relationship between Plaintiffs and Defendants soured, Fred
10 Lasswell, Inc. discovered the wrongful registration of the cartoonys.com domain
11 name, and demanded that the registration be transferred to it immediately.
12 Defendants refused.

13    42.    Until recently, the website posted on the domain contained a virtually
14 identical version of the stylized Cartoonys mark prominently displayed on the
15 homepage, identified "Fred Lasswell, Inc." in the browser tab, offered identical art
16 education services, displays a picture of the iconic "Uncle Fred" and contained a
17 copyright notice stating "© 2010 Fred Lasswell, Inc."  Also, consumers were directed
18 to the site when clicking on the "store" tab at UncleFred.com .  The Cartoonys.com
19 website then allowed consumers to purchase or obtain access to Uncle Fred content.
20 A reproduction of the Cartoonys homepage as it existed is shown below: [*Image on*
21 *next page and remainder of page intentionally blank*]

22

23

24

25

26

27

28



43.    Defendants' use of the cartoonys.com domain name containing the Cartoonys Marks or confusingly similar variations thereof was done with the bad faith intent to profit from the goodwill of the Cartoonys Marks:

a.    The Cartoonys Marks were well-established, highly distinctive and famous at the time of Defendants' purchase of the domain names, and known to Defendants.

b.    Defendants registered the domain name in their own name to interfere with and divert consumers from Fred Lasswell, Inc.'s legitimate offering of services at its own website, UncleFred.com , once the business relationship soured.

/ / /

c.   The cartoonys.com domain name contains the inherently distinctive CARTOONYS mark, a word mark owned exclusively by Fred Lasswell, Inc., as well as the strongest dominant portion of the word mark and stylized mark DRAW AND COLOR YOUR VERY OWN CARTOONYS RIGHT ALONG WITH UNCLE FRED.

d.   At no time have Defendants made any bona fide offering of any of their own goods or services under the CARTOONYS mark.

e.   The website content passes itself off as a website of "Fred Lasswell, Inc.," includes the representation that it is "by Uncle Fred" (another dominant portion of the registered stylized mark), contains the stylized figure associated with Uncle Fred (another dominant portion of the registered stylized mark), and even contains a picture of the actual "Uncle Fred," ensuring that no consumer can tell if this counterfeit website located at the Cartoonys.com domain name is anything other than the homepage of Fred Lasswell's Inc.'s services offered under the Cartoonys Marks.

f.   Defendants have attempted to redirect traffic from a bona fide Fred Lasswell, Inc. website to cartoonys.com for purchasing unauthorized copies of Copyrighted Works (using the store link on UncleFred.com  as shown below):



g.   Defendants have attempted to demand compensation from the rightful trademark owner to return the domain name.

44.   Accordingly, Fred Lasswell, Inc. is entitled to relief for cybersquatting under, *inter alia*, subsections (i), (ii)(I) and (ii)(II) of the cybersquatting provisions of 15 U.S.C. § 1125(d)(1)(A).

45.   The Defendants first used the Cartoonys Marks decades after the 1980s adoption of the marks by Fred Lasswell, Inc., and over a decade after the UncleFred.com  website had established its inviting and classic signature look and feel.  Defendants willfully intended to trade on the recognition of the famous Cartoonys Marks, and later, to harm the reputation of Fred Lasswell, Inc.

46.   Such cybersquatting was done willfully and in bad faith, knowing it would result in the likely confusion and deception of others, in order to profit off the Cartoonys Mark.

47.   Fred Lasswell, Inc. has suffered damages in an amount to be established after proof at trial or in the statutory amount of $100,000 per domain name.

48.   Fred Lasswell, Inc. is further entitled to the disgorgement of Defendants' profits for their unjust enrichment from the wrongful conduct.

49.   Fred Lasswell, Inc. is entitled to enhanced damages up to treble, punitive damages, and attorney fees as a result of Defendants' bad-faith conduct, done with malice, oppression, and fraud.

50.   Fred Lasswell, Inc.'s remedies at law are inadequate, entitling it to an injunction enjoining Defendants' cybersquatting and directing the Defendants and the registrar of the domain names to transfer the registration in the Cartoonys.com domain to Fred Lasswell, Inc., under 15 U.S.C. § 1125(d)(1)(C).

/ / /

/ / /

/ / /

/ / /

## SECOND CAUSE OF ACTION

## CYBERSQUATTING (DAYTOLAUGHANDPLAY.ORG)

## (15 U.S.C. § 1125(d))

51.     Plaintiffs incorporate by reference all other paragraphs contained in this Complaint as if stated herein.

52.     The Lasswell Foundation owns the exclusive trademarks in the United States for A DAY TO LAUGH AND PLAY, and has maintained a federal registration on the principle trademark register since August 18, 2009, for the mark in connection with "charitable services; namely, conducting and organizing cultural, educational and recreational events and activities for children and families, in Class 41."

53.     A true and correct copy of the U.S. Reg. No. 3,668,367 is attached as **EXHIBIT B**.  In addition to its federal registration, the Lasswell Foundation owns nationwide rights to the A DAY TO LAUGH AND PLAY mark by virtue of its long and continuous nationwide use of the mark in connection with these services since at least 2007.  The mark has become well-known nationwide by the relevant consumers. True and correct Newswire clippings are below:



54.     The mark is inherently distinctive.

55.     Defendants purchased the domain name, daytolaughandplay.org, and registered it in their own names.  Defendants were never authorized to register any

domain names of Plaintiffs in their own names, or to use them for Defendants' own purposes. As seen below, the domain "daytolaughandplay.org" was created on "12-Jan-2012" by Design Tank:



56.   As of the date of this filing, there is no website posted on the domain. The page previously was used as an ad-revenue-generating site. It displayed click-through ads targeted at those seeking out a domain related to A DAY TO LAUGH AND PLAY, in an attempt to redirect traffic to these click-through sites.

57.   The Lasswell Foundation demanded the daytolaughandplay.org registration be transferred to it immediately, but Defendants failed to do so.

58.   The website posted on the domain consists entirely of the A DAY TO LAUGH AND PLAY trademark (minus the prefatory "A"), and was registered with the bad faith intent to profit from the goodwill of the A DAY TO LAUGH AND PLAY mark:

a.    The A DAY TO LAUGH AND PLAY mark was well-established, federally registered, and highly distinctive at the time of

Defendants' purchase of the domain names, and known to Defendants.

b.   Defendants only registered the domain name daytolaughandplay.org in their own name to interfere with the Lasswell Foundation's offering of services under the mark once the business relationship soured.

c.   The domain name daytolaughandplay.org contains the inherently distinctive A DAY TO LAUGH AND PLAY mark, a mark registered and owned exclusively by the Lasswell Foundation.

d.   At no time have Defendants made any bona fide offering of any legitimate goods or services of their own under the A DAY TO LAUGH AND PLAY mark (or any other similar mark).

e.   The website sought to generate click-through ad revenues from those seeking out the Lasswell Foundation's A DAY TO LAUGH AND PLAY charitable services.  On information and belief, the ads used a targeted ad generating program that customizes the ads in an attempt to make them most relevant to those consumers who would be seeking out goods or services connected to DAY TO LAUGH AND PLAY.

f.   Defendants have attempted to demand compensation from the rightful trademark owner to return the domain name.

g.   The A DAY TO LAUGH AND PLAY mark is highly distinctive and famous.

59.   Accordingly, the Lasswell Foundation is entitled to relief for cybersquatting under, *inter alia*, both subsections (i), (ii)(I) and (ii)(II) of the cybersquatting provisions of 15 U.S.C. § 1125(d)(1)(A).

60.   The Defendants first used the A DAY TO LAUGH AND PLAY mark after the 2007 adoption of the mark by the Lasswell Foundation.  Defendants

willfully intended to trade on the recognition of the Lasswell Foundation's mark or harm the reputation of the Lasswell Foundation.

61.     Such cybersquatting was done willfully and in bad faith, knowing it would result in likely confusion and deception of others, and to profit off the use of the A DAY TO LAUGH AND PLAY mark in a domain name.

62.     The Lasswell Foundation has suffered damages in an amount to be established after proof at trial or in the statutory amount of $100,000 per domain name.

63.     The Lasswell Foundation is further entitled to the disgorgement of Defendants' profits for their unjust enrichment from the wrongful conduct.

64.     The Lasswell Foundation is entitled to enhanced damages up to treble, punitive damages, and attorneys' fees as a result of Defendants' bad-faith conduct, done with malice, oppression, and fraud.

65.     The Lasswell Foundation's remedies at law are inadequate, entitling it to an injunction enjoining Defendants' cybersquatting, and directing the Defendants and the registrar of the domain names to transfer the registration in the daytolaughandplay.org domain to the Lasswell Foundation.

**THIRD CAUSE OF ACTION**

**TRADEMARK INFRINGEMENT (CARTOONYS MARKS)**

**(15 U.S.C. §§ 1114, 1125 *et seq.*)**

66.     Plaintiffs incorporate by reference all other paragraphs contained in this Complaint as if stated herein.

67.     DRAW AND COLOR YOUR VERY OWN CARTOONYS RIGHT ALONG WITH UNCLE FRED, U.S. Reg. No. 1,336,417, is a valid, protectable trademark.

68.     Fred Lasswell, Inc. owns the exclusive trademarks in the United States to the Cartoonys Marks, including U.S. Reg. No. 1,336,417, DRAW AND COLOR YOUR VERY OWN CARTOONYS RIGHT ALONG WITH UNCLE FRED.

69.     Defendants' conduct as to each of the Cartoonys Marks, as alleged above, is without the consent of Plaintiffs and is used in a manner that is likely to cause confusion among ordinary consumers as to the source, sponsorship, affiliation, or approval of the goods, in violation of 15 U.S.C. § 1114.

70.     Fred Lasswell, Inc. also obtained a federal registration for its iconic face logo shown below on November 19, 1985, U.S. Reg. No. 1,371,103 (the "Face Logo"), a true and correct copy of the registration is attached as **EXHIBIT C.**



71.     Defendants started selling merchandise on Cafepress.com, using the below logo:



72.     The above logo is confusingly similar to the Face Logo.  Defendants' conduct as to the Face Logo is without the consent of Plaintiffs and is used in a manner that is likely to cause confusion among ordinary consumers as to the source, sponsorship, affiliation, or approval of the goods in violation of 15 U.S.C. § 1114.

73.     Defendants also sold, on CafePress, apparel using the Face Logo, with the eyes blackened out, as shown below:





74.     Use of the above blackened counterfeit logo is confusingly similar to the Face Logo and tarnishes the goodwill associated with the Face Logo.  Defendants' conduct as to the Face Logo is without the consent of Plaintiffs and is used in a manner that is likely to cause confusion among ordinary consumers as to the source, sponsorship, affiliation, or approval of the goods in violation of 15 U.S.C. § 1114.

75.     Defendants have also used marks confusingly similar to the Cartoonys and Face Logo Marks on popular social media websites, including YouTube and Facebook.  Indeed, Defendants have passed themselves off as Fred Lasswell on these social media sites, whose iconic image is a dominant portion of the registered Cartoonys Mark.

76.     As detailed above, after being given notice to cease, Defendants continued to use the Cartoonys Marks through which Defendants sold unauthorized copies of Fred Lasswell, Inc. products bearing the Cartoonys Marks. This also included, products bearing the Cartoonys Marks, shown below as of January 12,

2014:



77.    Defendants also used the Cartoonys Marks in conjunction with an Apple iTunes account and electronic storefront.  Defendants sold digital reproductions of Fred Lasswell, Inc., artwork and videos bearing the Cartoonys Marks through the iTunes account.  Plaintiffs never authorized the creation of this account or the sale of any digital reproductions of Fred Lasswell artwork and videos bearing the Cartoonys marks.  For example, as seen below, products bearing the Cartoonys Marks were sold by Schwartz, without authorization, on the iTunes storefront as of at least January 12, 2014: (*see next page*)

78.   Plaintiffs have yet to determine the full extent of Defendants'
infringement of the Cartoonys and Face Logo Marks.

79.   As a result, Fred Lasswell, Inc. has been damaged in an amount to be
established at trial, including Defendants' profits for the infringement, trebled based
on exceptional circumstances.

80.   The infringing use of identical goods and services constitutes
counterfeiting of the registered mark under both U.S. Reg. Nos. 1,336,417 and
1,371,103, entitling Fred Lasswell, Inc. to statutory damages in an amount up to
$2 million dollars per registered mark per type of goods or services sold, offered for
sale, or distributed.

81.   Defendants' actions constitute knowing, deliberate, and willful
infringement of Plaintiffs' federally registered marks.  The knowing and intentional
nature of the acts set forth herein renders this an exceptional case under 15 U.S.C.
§ 1117(a) and entitles Fred Lasswell, Inc. to attorneys' fees and costs.

82.   Fred Lasswell, Inc. is entitled to enhanced damages up to treble, punitive
damages, and attorneys' fees as a result of Defendants' bad-faith conduct, done with

malice, oppression and fraud.

83.     Fred Lasswell, Inc.'s remedies at law are inadequate, entitling it to an injunction enjoining Defendants' further infringement of the Cartoonys and Face Logo Marks.

**FOURTH CAUSE OF ACTION**

**TRADEMARK INFRINGEMENT (A DAY TO LAUGH AND PLAY)**

**(15 U.S.C. §§ 1114, 1125 *et seq.*)**

84.     Plaintiffs incorporate by reference all other paragraphs contained in this Complaint as if stated herein.

85.     A DAY TO LAUGH AND PLAY is a valid, protectable trademark.

86.     The Lasswell Foundation owns the exclusive trademarks in the United States to the A DAY TO LAUGH AND PLAY, including U.S. Reg. No. 3,668,367.

87.     Defendants' conduct, as to A DAY TO LAUGH AND PLAY, is without the consent of The Lasswell Foundation and is used in a manner that is likely to cause confusion among ordinary consumers as to the source, sponsorship, affiliation, or approval of the goods in violation of 15 U.S.C. § 1114.

88.     Defendants have also used marks confusingly similar to the A DAY TO LAUGH AND PLAY mark on popular social media websites, including YouTube and Facebook.

89.     As a result, the Lasswell Foundation has been damaged in an amount to be established at trial, as well as Defendants' profits for the infringement.

90.     The infringing use of identical goods or services constitutes counterfeiting of the registered mark under U.S. Reg. No. 3,668,367, entitling the Lasswell Foundation to statutory damages in an amount up to $2 million dollars per type of goods or services sold, offered for sale, or distributed.

91.     Defendants' actions constitute knowing, deliberate, and willful infringement of Plaintiffs' federally registered marks.  The knowing and intentional nature of the acts set forth herein renders this an exceptional case under 15 U.S.C.

§ 1117(a) and entitles The Lasswell Foundation to attorneys' fees and costs.

92.     The Lasswell Foundation is entitled to enhanced damages up to treble, punitive damages, and attorney fees as a result of Defendants' bad-faith conduct, done with malice, oppression, and/or fraud.

93.     The Lasswell Foundation's remedies at law are inadequate, entitling it to an injunction enjoining Defendants' infringement of the A DAY TO LAUGH AND PLAY mark.

**FIFTH CAUSE OF ACTION**

**COPYRIGHT INFRINGEMENT**

**(17 U.S.C. §§ 106, 501 *et seq.*)**

94.     Plaintiffs incorporate by reference all other paragraphs contained in this Complaint as if stated herein.

95.     Fred Lasswell, Inc. owns the copyright in many original works of art and audiovisual works (the "Copyrighted Works"). These include:

- The "Draw and color a cartoony party with Uncle Fred" video, Registration Number PA0000297940.
- The "Draw and color far-out pets" video, Registration Number PA0000518756.
- The "Draw and color funny doodles with Uncle Fred" video, Registration Number PA0000519569, and kids' workbook, Registration Number PA0000576308.
- The "Draw and color with Uncle Fred" video, Registration Number PA0000214257.
- "Uncle Fred" visual material, Registration Number VA 0000224105.

96.     Defendants produced, sold, and/or distributed unauthorized reproductions of these Copyrighted Works in several forms.

97.     Defendants created a YouTube account under the alias "Cartoonys," and posted video clips from the Copyrighted Works. Defendants were never authorized

1   to create such an account or post the video clips from the Copyrighted Works to the

2   YouTube website. For example, as seen below, Schwartz was posting videos by

3   "Cartoonys" on YouTube without authorization as of at least January 12, 2014:



98.     As of January 2, 2014, as depicted above, additional Copyrighted Works Schwartz was posting online without permission include, but are not limited to, "Draw and Color Funny Doodles with Uncle Fred [Theme Song]" and "Draw and Color a Dolphin with Uncle Fred."

99.     Defendants created an Apple iTunes account for the purpose of selling Uncle Fred "apps" for the Apple iPad through the iTunes Store.  The "Seller" for this account was listed as "Timothy Schwartz."  The iTunes storefront for each app contained a copyright notice stating "© 2013 Fred Lasswell, Inc."  For example, as of at least January 12, 2014,  "Timothy Schwartz" is listed as the developer, author, and seller on iTunes for the "Draw and Color Far-Out Pets with Uncle Fred":



100.   Defendant Timothy Schwartz listed himself as the "artist" in the iTunes storefront.  For example, as seen below, the iTunes storefront URL including /artist/timothy-schwartz/id605380607 listed as the "artist" as of January 12, 2014:



1    101.   Defendants began selling Uncle Fred "apps," containing Copyrighted

2    Works, in early 2013.  For another example as of at least January 12, 2014:



11    102.   As of January 12, 2014, the five apps Schwartz listed for sale, without

12    authorization, on the iTunes storefront included: (1) "Draw and Color"; (2) "Draw

13    and Color A Cartoony Party"; (3) "Draw and Color Funny Doodles"; (4) "Draw and

14    Color Far-Out Pets"; and (5) "Draw and Color Your Very Own Cartoonys."

15    Schwartz sold each of these apps, except "Draw and Color," for $1.99 per download:



26    103.   Screenshots of the apps advertised that "nearly an hour of Uncle Fred's

27    video lessons" was included as part of at least four of the apps.

28    / / /

1    104.   These "video lessons" included all or part of the Copyrighted Works, in

2    addition to other copyrighted works owned by Fred Lasswell, Inc.  Indeed,

3    Defendants stated that "[e]ach application has all the same lessons from each of the

4    videos of the same name."

5    105.   For example, Defendants launched the app "Draw and Color Far-Out

6    Pets", a conversion of one of the original videos:



15   106.   Fred Lasswell, Inc. never authorized the creation of the iTunes account

16   or the creation of any apps using the Copyrighted Works.  As of this filing, the iTunes

17   account appears to be inactive.

18   107.   Defendants also sold reproductions of the Copyrighted Works, including

19   four of the "Draw and Color" videos in both VHS and DVD formats.  For example,

20   as seen below, Defendants were selling reproductions of the Copyrighted Works with

21   four "Draw and Color" videos in both VHS and DVD formats as of January 12, 2014:

22   (*see next page*)

23

24

25

26

27

28



108.   Defendants have infringed Fred Lasswell, Inc.'s copyright in the Copyrighted Works in violation of Sections 106 and 501 of the Copyright Act, 17 U.S.C. §§ 106 and 501.

109.   As a result, Fred Lasswell, Inc. has been damaged in an amount to be established at trial, including for the damage caused by the inconceivably low sale of groups of the copyrighted materials for only $1.99 on iTunes and free distribution on YouTube.  It is also entitled to Defendants' profits from the infringement. Alternatively, it is entitled to statutory damages in the amount of $150,000 per work. Fred Lasswell, Inc. is further entitled to its attorney's fees and full costs of this action.

### SIXTH CAUSE OF ACTION

### COMMON LAW UNFAIR COMPETITION

110.   Plaintiffs incorporate by reference all other paragraphs contained in this Complaint as if stated herein.

111.   The claims alleged above also establish unfair competition compensable under the common law.

112.   As a direct and proximate result of Defendants' wrongful acts, Plaintiffs have suffered and continue to suffer substantial pecuniary losses and irreparable injury to its business reputation and goodwill.

113.   Such acts have caused damages in an amount to be established at trial.

114.   Such acts constitute passing off of the Plaintiffs' marks.

115.   Such acts, as alleged above, were done with malice, oppression, and fraud, thus entitling Plaintiffs to exemplary and punitive damages.

116.   Plaintiffs' remedies at law are inadequate, entitling Plaintiffs to an injunction enjoining Defendants' further unfair competition.

## SEVENTH CAUSE OF ACTION

## UNFAIR COMPETITION

## (CAL. B&P § 17200 *et seq.*)

117.   Plaintiffs incorporate by reference all other paragraphs contained in this Complaint as if stated herein.

118.   Defendants, by engaging in the wrongful conduct alleged in the Complaint have engaged in unlawful, unfair and fraudulent business act(s) or practice(s) within the meaning of Business and Professions Code §§ 17200 et seq.

119.   Defendants' unlawful, unfair and fraudulent business act(s) or practice(s) have resulted in an unfair competitive advantage to Defendants and have damaged Plaintiffs' business, by virtue of the acts alleged herein.

120.   Because of Defendants' unlawful, unfair and fraudulent business act(s) or practice(s), Plaintiffs are entitled to full restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits that have been obtained by Defendants as a result of such unfair business acts or practices.

121.   Plaintiffs are entitled to their attorneys' fees and costs in pursuing this action.

122.   Plaintiffs' remedies at law are inadequate, entitling Plaintiffs to an injunction enjoining Defendants' further unfair competition.

### EIGHTH CAUSE OF ACTION

### CONVERSION

123.   Plaintiffs incorporate by reference all other paragraphs contained in this Complaint as if stated herein.

124.   The Schwartz Defendants were engaged by Plaintiff, in part, to digitize certain valuable archives in Goldbook Publishing's offices.

125.   Defendants had no right to take possession of, or take, any property of Plaintiffs.  Plaintiffs own property, and have the exclusive right to possess, for which Defendants have taken possession including, but not limited to:

      a.     The proprietary tangible, digital business, and other property belonging to the Fred Lasswell Archive including, but not limited to, original artwork, sketches, drawings, writings, photographs, music, songs, films, videos, and books that were taken by Defendants, including those of some of the most influential artists and authors of the twentieth century;

      b.     The proprietary tangible, digital business, and other property belonging to The Lasswell Foundation for Learning and Laughter that were taken by Defendants;

      c.     The proprietary tangible, digital business, and other property belonging to Fred Lasswell, Inc. that were taken by Defendants;

      d.     Goldbook Publishing-related business records, account information, and proprietary material including, but not limited to, access codes to digital programming and websites, bank records, account numbers, PayPal account information, customer lists, and Uncle Fred's "Draw & Color with Uncle Fred" Children's educational programs;

e.     Goldbook Publishing's computers and their content including internal and external media devices, storage discs and CDs that were taken by Defendants;

f.     Fred Lasswell's historical documents that were taken by Defendants including, but not limited to, books, first editions, paintings, engravings, drawings and photographs of American Colonial History, the American West, American Theatre, the early days of American media and merchandising, Florida (Tampa), New York, World War II, The Great Depression, and rural America;

g.     All paintings, pen and ink drawings, sketches, comic panels, illustrations, uncirculated file copies of published children's books, Golden age comic books, trading cards, autographed works and nostalgic merchandise of popular fictional characters including Tarzan, Red Ryder, and Blondie that were taken by Defendants;

h.     All work taken by Defendants that were created by Fred Lasswell (Snuffy Smith), Stephen Slesinger (Tarzan), Fred Harman (Red Ryder), Charles Schultz (Peanuts), and Dik Browne (Hagar the Horrible); and

i.     All material possessions taken by Defendants from the home located at the Lasswell Home;

j.     The embezzled revenue, in a sum capable of identification, from the sale of Uncle Fred videos by Fred Lasswell, Inc.;

k.     All items and materials taken by Defendants from Fred Lasswell's office, including but not limited to:

a.     All items from the video production room;

b.     All items from the art studio;

c.      All items from the archival storage;

d.      All items from the general storage room;

e.      All items from the file out coves;

f.      All artbooks;

g.      All framed art work;

h.      All unframed original artwork;

i.      All archival boxes of Fred Lasswell fan mail labeled "Uncle Fred's fans and friends;"

j.      The Whiteboard;

k.      Fred Lasswell's chair;

l.      All items from Fred Lasswell's desk;

m.      All mini-cassettes; and

n.      All contents from the photograph boxes stacked on the shelves.

126.   This also includes over $600,000 in original comic strips belonging to Red Ryder Enterprises (see above, for example of the substantial collector's value of Fred Laswell original artwork).

127.   Defendants converted the aforementioned tangible property by wrongfully maintaining possession after return was demanded (and the reason (if any) for initial possession was terminated).

128.   Defendants also converted a portion of tangible property Plaintiffs own by taking physical pictures of the original and highly proprietary files, artwork, and cartoon renderings and wrongfully maintaining possession after return was demanded (and the reason (if any) for initial possession was terminated.

129.   Defendants have no claim of ownership, possessory or other right to this property.

130.   As a direct result of Defendants conversion, Plaintiffs have suffered damages in an amount to be established at trial.

/ / /

131.   Such acts, as alleged above, were done with malice, oppression, and fraud, thus entitling Plaintiffs to exemplary and punitive damages.

## NINTH CAUSE OF ACTION

### BREACH OF CONTRACT

132.   Plaintiffs incorporate by reference all other paragraphs contained in this Complaint as if stated herein.

133.   The agreement is valid and enforceable, and supported by adequate, mutual consideration.

134.   Plaintiffs have performed all of their obligations under the agreement, and any further unperformed obligations (if any) are excused.

135.   Goldbook Publishing and Schwartz agreed that Defendants would furnish the required services to prepare the Lasswell Archive for acquisition by the university.  Plaintiffs, acting under authority of Goldbook Publishing, are entitled to enforce the benefits of the contract.

136.   Defendants agreed that they would:

    a.   Carefully prepare an inventory of the Lasswell Archive in accordance with the requirements of the university, and to make digital scans of physical artwork;

    b.   replace all archival materials in the locations in which they were found following their being inventoried and scanned;

    c.   not disturb the furniture or furnishings at the Lasswell Home or Office and to leave these premises in the same condition in which Schwartz would find them;

    d.   not disturb any personal effects, materials unrelated to the process of creating the archive or any professional equipment; and

    e.   not reside in either the Lasswell Studio or Residence.

137.   Goldbook Publishing paid Defendants a substantial amount of money for their purported services.  As described above, Defendants breached the agreement by,

*inter alia*: (1) failing to carefully digitize and store the Lasswell Archive materials as promised, going to far as to steal the originals and the digitized archives that were created; (2) ransacking the Lasswell Office and displacing priceless works of art, furnishings, computer equipment, and professional equipment; (3) depriving Goldbook of the benefit of the bargain under the contract by failing to act with good faith and fair dealing; and (4) residing at the Lasswell Home.

138.   As a direct and proximate result of Defendants' wrongful acts, Plaintiffs have suffered and continue to suffer substantial pecuniary losses and irreparable injury to its business reputation and goodwill.

139.   Such acts have caused damages in an amount to be established at trial.

## TENTH CAUSE OF ACTION

## FRAUD

140.   Plaintiffs incorporate by reference all other paragraphs contained in this Complaint as if stated herein.

141.   Schwartz represented to Goldbook Publishing that Schwartz and Design Tank had the experience, educational background, and technical and organizational skills necessary to prepare the Lasswell Archive for acquisition.

142.   On information and belief, Plaintiffs allege that Schwartz made these statements to Goldbook Publishing and its CEO, Pati Slesinger, with the intent to induce Goldbook Publishing to enter into an agreement with Defendants.  Through this agreement, Defendants sought to gain access to the entire Fred Lasswell, Inc., business and related entities, in order to steal Plaintiffs' original works of art, copyrighted and trademarked materials, trade secrets, business and computer equipment, and other tangible and intangible property.  This was the means by which Schwartz was placed in a position to exploit the property of Plaintiffs.

143.   On information and belief, Plaintiffs allege that Schwartz's representations as to Defendants' experience, background, and skills were false, and his ulterior motivation was material but not disclosed to Plaintiffs.  Defendants knew

they did not have the required skills or knowledge to complete the archival process for the Lasswell Archive.  Instead, Schwartz's representations were a ploy to gain access to Plaintiffs' business, from which Defendants brazenly stole original works of art, copyrighted and trademarked materials, trade secrets, business and computer equipment, and other tangible and intangible property belonging to Plaintiffs. Schwartz knew that Plaintiffs would rely on said representations, and Plaintiffs did in fact rely on said representations.

144.   Had Goldbook Publishing and Plaintiffs known the actual facts, they would not have contracted with Defendants for the preparation of the Lasswell Archive.

145.   As a direct and proximate result of Defendants' fraudulent conduct, Plaintiffs have been damaged in an amount subject to proof at the time of trial.

146.   Plaintiffs acts alleged above were willful, wanton, malicious, oppressive and undertaken with conscious disregard for the rights of Plaintiffs and with intent to defraud Plaintiffs, and justify the award of exemplary and punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand the following relief:

1.      A judgment in favor of Plaintiffs, respectively, and against Defendants on all counts;

2.      Preliminary and permanent injunctive relief as requested above, including for transfer of the registrations in the domain names by Defendants and/or the domain name registrar(s);

3.      Damages in an amount to be determined at trial;

4.      Defendants' unjust enrichment and/or disgorgement of Defendants' profits;

5.      Account for and return of all property Defendants converted;

6.      Enhancement and trebling of damages due to willfulness and bad faith;

7.      Exemplary and punitive damages;

8. Pre-judgment interest at the legally allowable rate on all amounts owed;

9. Statutory damages of up to $2 million per infringement per type of goods or services sold, offered for sale, or distributed, and $100,000 per domain name;

10. Statutory damages of $150,000 per copyright work infringed;

11. Costs, expenses and fees under, *inter alia*, 15 U.S.C. § 1117(a);

12. Restitution;

13. Attorney's fees under, among others, 15 U.S.C. §§ 1117(a) *et seq.* as an exceptional case and Cal. B&P §§ 17200 *et seq.*; and

14. Such other and further relief as this Court may deem just and proper to fully compensate Plaintiffs.

Dated: May 19, 2016    MINTZ LEVIN COHN FERRIS GLOVSKY
           AND POPEO PC

           By *s/Andrew Skale*
             Andrew Skale, Esq.
             Ben L. Wagner, Esq.

           *Attorneys for Plaintiffs*
           *LASSWELL FOUNDATION FOR LEARNING AND*
           *LAUGHTER, INC. and FRED LASSWELL, INC.,*
           *RED RYDER ENTERPRISES, INC., AND*
           *GOLDBOOK LTD.*

# DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial as to all issues that are so triable.

Dated:  May 19, 2016

MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO PC


By  *s/Andrew Skale*
    Andrew Skale, Esq.
    Ben L. Wagner, Esq.


*Attorneys for Plaintiffs*
*LASSWELL FOUNDATION FOR LEARNING AND LAUGHTER, INC. and FRED LASSWELL, INC., RED RYDER ENTERPRISES, INC., AND GOLDBOOK LTD.*