# EXHIBIT 9

# MINTZ LEVIN

3580 Carmel Mountain Road
Suite 300
San Diego, CA 92130
858-314-1500
858-314-1501 fax
www.mintz.com

Andrew D. Skale | 858 314 1506 | ADSkale@mintz.com

October 3, 2014

**VIA FACSIMILE & U.S. MAIL**

David J. Plante, Esq.
The Plante Law Group, PLC
806 North Armenia Avenue
Tampa, Florida 33609

    Re: <u>Mr. Timothy Schwartz</u>

Dear Mr. Plante,

We anticipate you have advised Mr. Schwartz to apply a pre-litigation hold on possession of any documents, computers, scanners, or electronically stored information related to his services concerning, but not limited to, Stephen Slesinger, Inc., Goldbook Publishing, LLC ("Goldbook"), Red Ryder Enterprises, Inc., and the Lasswell and Slesinger families. If you have not instructed your client to preserve this material, please do so immediately.

As our investigation progresses and continues to reveal the extent of Mr. Schwartz's tortious and criminal behavior, we are appalled at the intentional harm Mr. Schwartz continues to inflict. Mr. Schwartz has been given every benefit of the doubt to return my clients' valuable personal and professional property. Mr. Schwartz nonetheless refuses to return <u>the property he stole</u> or identify the <u>whereabouts</u> of the thousands of items he removed from this property location in the 1111 and the 5108 Longfellow address. Additionally, we are well aware of Mr. Schwartz's intentional efforts to cover his tracks by stealing the index and ancillary record-keeping documents. Please inform Mr. Schwartz that we have back up indexes and are currently cataloguing each and every piece of property that he now unlawfully possess.

As described in more detail herein, the damages Mr. Schwartz has intentional caused have become staggering. **To avoid any confusion, please accept this letter as our final request for Mr. Schwartz to return my client's property before we involve state and federal law enforcement and file suit.** Unless Mr. Schwartz provides a schedule to replace all of the property he took—to be returned to the same location and in the same condition upon which it was taken—we will swiftly move to hold him accountable for all related damages.

We have confirmed Mr. Schwartz has broken into, entered, searched and removed the items from every room in the Longfellow property. Mr. Schwartz has literally been through every private bedroom closet and drawers, rooms and attic crawl space where cash is now missing. Items

MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, P.C.

David J. Plante, Esq.
October 3, 2014
Page 2

including, but not limited to, cash jewelry, and personal business effects are now gone. And no one but Mr. Schwartz knows where they are now.

Mr. Schwartz is well aware he had no right to ravage the Longfellow property. Because of the extensive personal and professional property in the Longfellow property, it was never for rent, sale, or available to any staff member for personal use. Mr. Schwartz never had authorization to enter any room in the property aside from the garage (and the bathroom therein) and the route to reach the desk of Fred Lasswell.

We have also recently learned that Mr. Schwartz has unlawfully registered my clients' domain names in his name. Mr. Schwartz has no right to set up domain names in his name and we intend to hold him accountable. **If Mr. Schwartz wishes to avoid litigation, he must provide a list of all of my clients' domain names he has registered and facilitate the release of each** domain. Mr. Schwartz also recently received an email from one of Ms. Slesinger's assistants concerning the location of the Red Ryder original materials. **Please immediately identify the location of these original comic materials.**

To date, despite your assurances otherwise, Mr. Schwartz has failed to return or identify the extensive property he has stolen. The missing property Mr. Schwartz refuses to return—owned by Stephen Slesinger, Inc., Goldbook Publishing, LLC ("Goldbook"), Red Ryder Ent. Inc., and the Lasswell family—has a value of well over $3 million. Mr. Schwartz has stolen the originals, digitized archives, as well as the scanner, camera, and computer he was using to digitize and archive these materials. By disabling and stealing these digital archives and related archived material, Mr. Schwartz continues to cripple my client's ability to run its business. Mr. Schwartz has also unlawfully taken all previous work he completed (related to taking pictures of existing material) throughout the entire history of the parties relationship. After being paid at least $500,000 (according to Mr. Schwartz) for this work, Mr. Schwartz stole this material thereby depriving Goldbook of the services for which it previously paid.

Mr. Schwartz's sloppy business practices continue to reveal the breadth of his now well-documented theft and trademark and copyright infringement. While the _full_ extent of the infringement and damages remains known only to your client, we continue to obtain evidence revealing the alarming scope of Mr. Schwartz's unlawful efforts. For example, we recently learned that Mr. Schwartz has brought a large travel trailer to the Longfellow property. Given Mr. Schwartz's previous refusal to return the stolen property, coupled with what we now know about Mr. Schwartz's unlawful business scheme in Olney, Illinois and Brownsburg, Indiana, we believe he is using the trailer to move the stolen property. If Mr. Schwartz does not identify the location of the stolen property described below, we intend to contact law enforcement in Florida, Illinois, and Indiana. In light of the mounting incriminating evidence, we hope Mr. Schwartz will honor his previous commitment to return our client's valuable intellectual and tangible property.

Completely independent of any legal claims Mr. Schwartz may think he has, he needs to immediately return and account for Goldbook's property (and Goldbook's client, Fred

MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, P.C.

David J. Plante, Esq.
October 3, 2014
Page 3

Lasswell's property). A two week search of the 1111 N Westshore offices by two licensed investigators and supporting consultants could not locate the missing property, some which is identified in **Attachment 1**, Mr. Schwartz removed. Both you and Mr. Schwartz have refused to tell us where this property is. We are currently working with law enforcement to locate the property, and suspect Mr. Schwartz transferred it to his sham businesses in Illinois and Indiana.

In addition to the missing property set forth in Attachment 1, Mr. Schwartz must immediately return and account for all copies of digital and tangible archives, business and personal records, business and personal photographs, documents, art work, dramatic works, shows, performances, clips, creative content, writings, sketch books, etc. that related to Goldbook, its clients, and any related entities. Mr. Schwartz has admitted to downloading and/or imaging our client's computers in Florida and California. Our records reveal the disturbing extent of the property in Mr. Schwartz's possession. For example, Mr. Schwartz went as far as voyeuristically photographing private family pictures of children and the personal contents which he could have only accessed by stealing keys from the Longfellow home office and using them to unlock personal files he had no authorization to access. Further, please put Mr. Schwartz on notice that any use of this property will be pursued to the fullest extent under the law. Mr. Schwartz has no right to this property – any attempt to use it for any purpose will not be tolerated.

If Mr. Schwartz genuinely wishes to avoid the mounting damages resulting from his interference and unlawfully withholding (and, as explained below, misusing) our client's property, as well as criminal exposure for theft, extortion, conspiracy, and trespass, he must immediately (1) return all property; (2) verify he no longer possesses copies of the property; (3) list any physical or intangible property he has destroyed or disposed of.

By now, we hope Mr. Schwartz has shared with you his emails where we agreed to accept amounts previously paid for his services, stated that he did no work to invoice in 2013 (and thus had no reason to be in Florida), and that he would accept "whatever [our client] think[s] is fair" for the inflated 2012 $75,000 invoice. Nonetheless, as a result of our client's mounting damages, we request a prompt response to the following issues.

I.     **MR. SCHWARTZ'S COPYRIGHT AND TRADEMARK INFRINGEMENT**

While we appreciate your statement that Mr. Schwartz will fully return Goldbook's valuable property, he (or you) has made no effort to return the property. Rather, we were appalled to learn that Mr. Schwartz is actively claiming he owns Fred Lasswell, Inc. Specifically, Amazon On Demand Publishing LLC has informed our client that Mr. Schwartz, through Design Tank, Inc., is actively infringing our client's trademarks and unlawfully representing his affiliation with Fred Lasswell, Inc. He setup this account, and others we have identified and taken down, using his business addresses in Illinois and Indiana. Undoubtedly incriminating Mr. Schwartz, he has set himself up as the only authorized person to access these accounts.

This unequivocally establishes Mr. Schwartz has, without authorization, misused his access to download the creative and business content belonging to Fred Lasswell Inc. (over 10 years of

MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, P.C.

David J. Plante, Esq.
October 3, 2014
Page 4

business records), to his computers for his separate purposes. He then disassembled or destroyed the computers that were previously in good working order and removed all of the discs containing the archives from their location on the media shelves.

Additionally, we know that Mr. Schwartz has set up sham phone contact numbers diverting our client's communications, drove business away from the Lasswell website to a website he controlled, made unauthorized sales of our client's content on fraudulent accounts he setup with iTunes, among others, and diverted our client's mail and telephone numbers to addresses and phone numbers he controlled. He also has linked a PayPal account to the bank account of Fred Lasswell, Inc., from which he withdrew $5,000 and attempted to withdraw $10,000 more. The extent of his activity on PayPal was substantial, and we are currently working with PayPal to determine the full extent of Mr. Schwartz's unlawful behavior.

Our client also has first-hand knowledge that Mr. Schwartz is utilizing addresses and phone numbers associated with his business associates or agents in Illinois and Indiana to further his theft of our client's intellectual property and original art and collectibles representing 80 year of American popular culture and ephemera. Needless to say, the anticipated damages if Mr. Schwartz has damaged or destroyed any of this valuable property will be astronomically extreme.

Despite Mr. Schwartz's hollow claims to the contrary, our ongoing investigation has revealed Mr. Schwartz has never been hired as an employee with any of the entities he identified in his counterclaims. If you or Mr. Schwartz has **any** evidence that he was in fact an employee of any Florida entity, e.g., pay stubs, withholding tax, etc., I am happy to review it. As such, Mr. Schwartz will not qualify as an "employee," as defined in Florida's private-sector Whistleblower Act. Further, Mr. Schwartz has not complied with the written notice requirement under the Whistleblower Act. Please be advised that our investigation has produced corroborated evidence that Mr. Schwartz falsely claimed his business entity was a California Corporation to avoid being issued a 1099. We were not surprised to learn that Mr. Schwartz has several civil judgments and tax liens pending in California.

We also recently learned through the Florida Department of Treasury that Mr. Schwartz has continued to unlawfully sell our client's products. The State has alleged that substantial sales were made. And these sales were made without our client's knowledge or approval. We have no records of these unauthorized sales and have received no revenues. Further, now that we have remedied Mr. Schwartz's efforts to divert our client's mail, we have additional evidence of his ongoing infringement.

As we hope you are aware, Mr. Schwartz was engaged to digitize certain valuable archives that already existed in Goldbook's offices, including the 1111 N. Westshore offices. Goldbook's offices were extremely organized prior to Mr. Schwartz's engagement.

The project that brought him to Florida involved scanning archives prior to the donation to the Ohio State University Comic Art Museum and Library. Rather than scanning the archives, it

MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, P.C.

David J. Plante, Esq.
October 3, 2014
Page 5

appears Mr. Schwartz ransacked the office, stole extensive original artwork and documents, and now refuses to return the materials unless he receives an extortive payment.

Mr. Schwartz agreed to store the digitized material on Goldbook's computers and storage devices. That never happened. Instead, Mr. Schwartz copied highly proprietary information to his personal computers. Goldbook was shocked to find their computers—including 2 Mac towers and 3 iMacs—which only Mr. Schwartz had access to, are missing along with all of the backup drives and discs. The only remaining computes have crashed. Likewise, the storage shelves previously housing organized compact discs are empty. These acts, by no coincidence, came on the heels of Mr. Schwartz being confronted about his inflated 2012 invoice.
Mr. Schwartz also currently possesses the originals and copies of objects, documents, and artwork he digitized. The originals were never returned to their appropriate places. Our investigation also reveals extensive incriminating behavior including Mr. Schwartz placing materials in a dumpster, wheeling the dumpster out of the office building, and then removing items from that dumpster. Additionally, all evidence points to Mr. Schwartz having deceivingly tried to avoid detection as he continued his scheme to convert Goldbook's valuable property.

For example, without permission, Mr. Schwartz was removing valuable comics from metal file cabinets and placing them in portable cabinets. These original comics are now missing. To further his scheme and avoid detection, we now know Mr. Schwartz was replacing original comics with less valuable "placeholders" to create the façade that the original comics were still in the proper location. As such, Mr. Schwartz's actions were willfully calculated and still an ongoing work in progress.

While Mr. Schwartz unequivocally possesses various original works, the scope of the copies he created remains unclear. As such, we expect you will advise Mr. Schwartz of his duty to preserve the integrity of his computers, scanners, cameras, video equipment, tapes, recorders, and any other media-related devices.

## II. VACATING THE LONGFELLOW PROPERTY AND PROPERTY DAMAGE

Next, we have not received confirmation that Mr. Schwartz has permanently vacated the Longfellow property. Further, we believe he is, once again, unlawfully occupying the property and intentionally causing further property damage. Most recently, Mr. Schwartz has disconnected the power to the pool motor and obstructed the pool company from fixing the pool. Equally troubling, after previously complaining about a mold problem, Mr. Schwartz has refused to allow the roofing and mold specialists to inspect the property. Mr. Schwartz will be held liable for the continuing damage to the pool and from the mold.
As we hope you have seen, Mr. Schwartz has acknowledged in email correspondence that he has no right to occupy the property. After Mr. Schwartz was confronted about his fraudulent invoice in March 2013, he became angry and began making threats to create problems for our client. His subsequent apologies for those threats are well documented in emails. And even in those communications, his comments included, but were not limited to:

MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, P.C.

David J. Plante, Esq.
October 3, 2014
Page 6

- "I had no idea I would be in Florida this long or I would have found my own place here"

- "I have never felt or treated this house like it was my place."

- "My clothes are still in suitcases!"

- Admitting he "overstayed" because "it's so nice here," yet cautioning "don't think I'm taking advantage."

In addition to failing to pay rent, he has yet to provide a copy of any alleged lease let alone any alleged lease terms (e.g., duration, rent, etc.). Additionally, Mr. Schwartz acknowledged he had no project job in Florida, there was no work to invoice for 2013, and thus he had no reason to stay in Florida. Mr. Schwartz also wrote he was leaving Florida and would return the house keys upon his return to California, where his personal items were stored and where he planned to resolve the fraudulent 2012 invoice.

Even if Mr. Schwartz's bald Counterclaim allegations (including his amended Counterclaims) were true, which they are not, he previously admitted any purported lease was incident to his "employment." As such, Mr. Schwartz cannot plausibly claim his "employment" was terminated, yet his right to remain on the property persevered. Additionally, even if Mr. Schwartz was entitled to $500,000 as his new Counterclaim alleges, that does not provide a legally cognizable basis to remain on the property. Such "self-help" is strongly disfavored by both Florida and California Courts and will only increase the dramatically-increasing damages our client is entitled to.

This letter therefore should serve as our final demand that Mr. Schwartz either (1) produce a lease or (2) confirm he has permanently vacated the property **by October 13, 2014**. Regardless, assuming Mr. Schwartz was truthful in his counterclaim, he is liable for $5,000/month in rent for three years, totaling $180,000 in past-due rent.

In sum, Mr. Schwartz is liable for the following, non-exhaustive list of damages:

- Over $800,000 for the material he has stolen and/or destroyed;
- Additional damages for the ongoing interference to Goldbook's business operations;
- The $500,000 Mr. Schwartz (according to his claims) was paid for work he continues to withhold;
- Over $1,000,000 in statutory and punitive damages for Mr. Schwartz's ongoing (and now well-documented) trademark and copyright infringement;
- At least $180,000 in past-due rent; and
- Payment for the property damage to the Longfellow home including, but not limited to, damage to the pool and roof.

We hope Mr. Schwartz realizes the extensive harm he has and continues to cause despite being given every opportunity to return the property that is clearly not his. We look forward to the safe

MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, P.C.

David J. Plante, Esq.
October 3, 2014
Page 7

and immediate return of the identified property. If, however, all property is not accounted for or safely returned by **October 13, 2014**, and if Mr. Schwartz does not either produce a lease or confirm he has permanently vacated the Longfellow property by **October 13, 2014**, Goldbook will pursue Mr. Schwartz and his co-conspirator family members to fullest extent under the law and hold him responsible for all costs and damages (compensatory, punitive, and consequential) for his unlawful behavior.

This letter is written without prejudice to any of our client's rights, claims or defenses, all of which are expressly reserved.

MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, P.C.

Andrew D. Skale

ADS/kas

MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, P.C.

David J. Plante, Esq.
October 3, 2014
Page 8

## ATTACHMENT 1

To avoid litigation, in addition to returning the property identified in our January 28 letter, Mr. Schwartz must complete the following by **October 13, 2014**:

(1) Return all proprietary tangible, digital business, and other intellectual property belonging to the Fred Lasswell Archive including, but not limited to, original artwork, sketches, drawings, writings, photographs, music, songs, films, videos, and books;

(2) Return all proprietary tangible, digital business, and other intellectual property belonging to The Lasswell Foundation for Learning and Laughter;

(3) Return all proprietary tangible, digital business, and other intellectual property belonging to Fred Lasswell, Inc.;

(4) Return all Goldbook-related business records, account information, and proprietary material including, but not limited to, access codes to digital programming and websites, bank records, account numbers, customer lists, and Uncle Fred's "Draw & Color with Uncle Fred" Children's educational programs;

(5) Return all real property belonging to The Estate of Shirley Lasswell and identify any property that was destroyed or not returned;

(6) Return all Goldbook computers and their content including internal and external media devices;

(7) Download all contents he has stored on any devices, backups or on any cloud-related locations.

(8) Return all backups of any digital files Mr. Schwartz currently has in his possession;

(9) Return all items and material from Fred Lasswell's office including, but not limited to:

    a. All items from the video production room;
    b. All items from the art studio;
    c. All items from the archival storage;
    d. All items from the general storage room;
    e. All items from the file out coves;
    f. All artbooks;
    g. All framed art work;
    h. All unframed original artwork;

      i. All archival boxes of Fred Lasswell fan mail labeled "Uncle Fred's fans and friends;"
      j. The Whiteboard;
      k. Fred Lasswell's chair;
      l. All items from Fred Lasswell's desk;
      m. All mini-cassettes; and
      n. All contents from the photograph boxes stacked on the shelves.

(10) Return Fred Lasswell's historical documents including, but not limited to, books, first editions, paintings, engravings, drawings and photographs of American Colonial History, the American West, American Theatre, the early days of American media and merchandising, Florida (Tampa), New York, World War II, The Great Depression, and rural America;

(11) Return all original and material or digital copies of all paintings, pen and ink drawings, sketches, comic panels, illustrations, uncirculated file copies of published children's books, Golden age comic books, trading cards, autographed works and nostalgic merchandise of popular fictional characters including Winnie the Pooh, Tarzan, Red Ryder, and Blondie;

(12) Return all original and material and digital copies of all work created by Fred Lasswell (Snuffy Smith), Stephen Slesinger (Tarzan), A.A. Milne (Winnie the Pooh) E. H. Shepard (Winnie the Pooh), Fred Harman (Red Ryder), Charles Schultz (Peanuts), and Dik Browne (Hagar the Horrible);

(13) Return all material possessions from the home located at 5108 Longfellow Ave. in Tampa, Florida;

(14) Identify any items that were destroyed or are no longer in Mr. Schwartz's possession from the home located at 5108 Longfellow Ave. in Tampa, Florida;

(15) Identify any items that were destroyed or are no longer in Mr. Schwartz's possession from Goldbook's California and Florida offices;

(16) Identify each account, phone number, forwarding number, email address, web domain, website, or other internet-related location in which Mr. Schwartz used any information related to Goldbook including, but not limited, any purported representation Mr. Schwartz made that he was affiliated with Goldbook or their intellectual property;

(17) Identify each account, phone number, forwarding number, email address, web domain, website, or other internet-related location in which Mr. Schwartz used to accept or transfer any money concerning Goldbook or their intellectual property;

MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, P.C.

David J. Plante, Esq.
October 3, 2014
Page 10

(18)   Identify all businesses or individuals Mr. Schwartz contacted while representing that he had an affiliation or existing relationship with Goldbook or their intellectual property;

(19)   Identify any businesses or individuals to whom Mr. Schwartz claimed he had any authority or rights concerning Goldbook's business or intellectual property (we are aware Mr. Schwartz misrepresented his authority with individuals at Daisy, among others); and

(20)   Identify all representations Mr. Schwartz made on the internet concerning Mr. Schwartz's purported position with our client, including his misrepresentation that he was creative director for Red Ryder Enterprises.

The aforementioned list includes all original documents/materials and any copies. Additionally, we expect Mr. Schwartz to identify any of the aforementioned property that was destroyed or not returned for any reason.

Given the extensive volume of materials Mr. Schwartz possesses coupled with the results of our private investigations, we also expect Mr. Schwartz to provide the following:

- Certify there are no additional original materials or copies, both tangible and digital, in his possession, in his computer devices or on Shared digital storage accounts, that either he or any of his agents possess.
- Provide a detailed index of all materials Mr. Schwartz claims he is returning; and
- Restore the home and offices located at 5108 Longfellow Ave to its original order.

33539749v.1